## LYMAN G. FALES *vs.* INHABITANTS OF EASTHAMPTON.

Hampshire.     September 18, 1894. — November 30, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Eminent Domain — Water Rights — Damages — Evidence.*

The existence of a dam without a mill on land suitable for a mill site does not give the owner of the land a right, under the Pub. Sts. c. 190, to flow lands of upper riparian owners, but, as the land may have a greater market value on that account, it is proper in estimating the damages occasioned by the taking thereof by the right of eminent domain to take into consideration its value as a mill site, not only in connection with the water power then existing, but also in connection with the right which might thereafter be acquired by the flooding of the lands of upper riparian owners, the limit to the inquiry as to the possible future use of the land being left to some extent to the discretion of the presiding judge.

At the trial of a petition for the assessment of damages occasioned to the owner of a dam and of land suitable for a mill site by the diversion of water from the stream above the dam, and by the laying of pipes in the land below the dam, it appeared that the petitioner could not raise a head of water of any practical value, or obtain a reservoir as high as the dam, except by flowing lands belonging to others. The jury were instructed, in substance, that in estimating damages they were to allow the petitioner nothing on account of the dam; that they were to take into account the facts that the petitioner could flow back only about eighty rods on his own land, by doing which he could raise a head of no practical value; that by raising a head of water of practical use lands belonging to others would be flowed, which he could not do without paying them adequate damages

---

therefor; that damages were not to be awarded in reference to the particular situation or circumstances or plans of the owner; but that they might award him such damages as he sustained by the taking of such water and rights as the respondent had been shown by the evidence to have taken, and such damages to his land as it had suffered by the laying of pipes in it, in view of such uses as the same, considered as property, could be profitably applied to, as shown by the evidence. *Held,* that the instructions were correct. *Held, also,* that the refusal to rule that the petitioner's water power "consisted in the difference of level between the surface where the brook first touches and where it leaves his land" gave the respondent no ground of exception.

At the trial of a petition for the assessment of damages occasioned to the owner of a dam and of land suitable for a mill site by the diversion of water from a stream above the dam, it appeared that the petitioner could not raise a head of water of any practical value or obtain a reservoir as high as the dam except by flowing land belonging to others, and evidence was admitted on the question of the value of the land as a mill site and of the uses which could be made of a reservoir so obtained. *Held,* that evidence offered by the respondent as to the value of the land of upper riparian owners which would be flowed by the petitioner's dam if a full reservoir were maintained was improperly excluded.

LATHROP, J.　This is a petition for the assessment of damages occasioned to the petitioner by the taking of certain water rights, and by the laying of pipes in his land, under the St. of 1891, c. 252, entitled "An Act to supply the town of Easthampton with water."

At the trial in the Superior Court there was evidence that the petitioner was the owner of a dam across a stream called Bassett Brook, which dam had been built by the petitioner's grantor, partly at his own expense, and partly at the expense of the respondent, there being a highway across the dam; and that the petitioner owned land above the dam and land below it.

The respondent partly diverted the water of the stream, and laid pipes in the land below the dam.

It seems to have been taken for granted at the trial, that, although the petitioner had a valuable dam, he had no water power of any practical value except by flowing the land above, the evidence being uncontradicted that the water could be raised only two feet before flowing the land of the upper riparian owners; and the respondent asked that the evidence as to the value of the water power be limited to the power to be obtained by flowing only the petitioner's land. The presiding judge, however, admitted evidence to show the uses which could be made of the waters of the brook with such a reservoir as could be made by the dam. There was evidence that a full reservoir

as high as the dam would flow a valley nearly one mile long, the greater part of which was beyond the plaintiff's land. While this evidence was admitted, the presiding judge excluded evidence offered by the respondent as to the value of the lands which would thus be flowed.

Neither the petitioner nor his grantor had a mill on the stream, though there was evidence that the petitioner contemplated building one there.

The jury were instructed, in substance, that in estimating damages they were to allow the petitioner nothing on account of the dam; that they were to take into account the facts that the petitioner could flow back only about eighty rods on his own land, by doing which he could raise a head of no practical value; that by raising a head of water of practical use lands belonging to others would be flowed, which he could not do without paying them adequate damages therefor; that damages were not to be awarded in reference to the particular situation or circumstances or plans of the owner; but that they might award him such damages as he sustained by the taking of such water and rights as the respondent had been shown by the evidence to have taken, and such damages to his land as it had suffered by the laying of pipes in it, in view of such uses as the same, considered as property, could be profitably applied to, as shown by the evidence.

The bill of exceptions states that the evidence was carefully limited to show the beneficial use to which the water power of the petitioner in connection with his land could be put, and with reference to the feasibility of using the same as a mill privilege.

The respondent asked the judge to instruct the jury that the petitioner's water power consisted in the difference of level between the surface where the brook first touched and where it left his land. The judge declined to give this instruction.

The jury found for the petitioner; and the case comes before us on the respondent's exceptions to the rulings of the presiding judge.

The first question which arises is as to the construction of the bill of exceptions. It is not entirely clear whether the jury were allowed, in estimating the value of the land taken, to take into consideration its value as a mill site, not only in connection

with the water power which the petitioner then possessed, but also in connection with the right which the petitioner might acquire, by building a mill, to flood the lands on the stream above his own. It seems to us that a fair construction of the bill of exceptions shows that the jury were allowed to take the latter element into consideration.

Assuming this to be so, the question arises whether they were properly allowed so to do; and we are of opinion that they were.

Section 4 of the St. of 1891, c. 252, provides that the town " shall pay all damages sustained by any person or corporation in property by the taking of any lands, right of way, water, watercourse, water right or easement, or by any other thing done by said town under the authority of this act."

The rule is well settled in a case of this kind, where property is taken by the right of eminent domain, that the jury are to consider not only the value of that which is taken, but also the effect of the taking upon that which is left; and, as is stated by Mr. Justice Knowlton in *Maynard* v. *Northampton*, 157 Mass. 218, " In estimating the value of that which is taken they may consider all the uses to which it might properly have been applied if it had not been taken. In like manner, the effect on that which is left should be estimated in reference to all the uses to which it was naturally adapted before the taking. Damages are not to be awarded in reference to the peculiar situation or circumstances or plans of the owner, or to the business in which he happens to be engaged; but any and all of the uses to which the land considered as property may profitably be applied, whether contemplated by the owner or not, may well be taken into the account by the jury." See also *Boom Co.* v. *Patterson*, 98 U. S. 403.

It is true, as the respondent contends, that the mere existence of a dam upon the petitioner's land did not give him any right to flow the lands of other persons farther up the stream, under the Pub. Sts. c. 190; *Fitch* v. *Stevens*, 4 Met. 426; but a lot of land on a stream suitable for a mill site may have a greater market value on this account than it would have if it were not suitable for a mill site.

There is undoubtedly a limit to the questions which may be asked concerning the possible future use of land. *Gardner* v.

*Brookline*, 127 Mass. 358, 362. And to some extent this is a matter of discretion on the part of the presiding judge. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35. If we regard the question as one of discretion, the judge has exercised his discretion in favor of the petitioner.

The question to be determined is the fair market value of that which is taken and that which is left. In considering the uses to which the property may be put, the element of chance or probability may enter to some extent into the market value, and be considered by the jury. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163.

In the case at bar, we see no error in the evidence admitted, or in the rulings given.

As to the ruling requested,* defining what the petitioner's water power was, while it has the great authority of Chief Justice Gibson in its support, *M' Calmont* v. *Whitaker*, 3 Rawle, 84, 90, we are of opinion that the refusal to give it affords the respondent no ground of exception. No question was made as to the extent of the petitioner's water power, and the jury were expressly instructed that they were to allow nothing on account of the dam; and that they were to take into account the facts that the petitioner could flow back only about eighty rods on his own land, by doing which he could raise a head of no practical value; and that by raising a head of water of practical use lands belonging to others would be flowed, which he could not do without paying them adequate damages therefor.

In the opinion of a majority of the court, however, the judge erred in refusing to admit the evidence offered by the respondent of the value of the lands which would be flowed by the petitioner's dam, if a full reservoir were maintained.

Whether the petitioner's land had any value as a mill site depended largely upon whether it was a practicable matter to flow the lands above. In determining this, the value of those lands would necessarily enter as an important element to be considered. They might be of so great a value that no man of reasonable prudence would consider that it was practicable to build a mill and flow the lands. While the jury were instructed

---

* The respondent requested the judge to instruct the jury "that plaintiff's water power consisted in the difference of level between the surface where the brook first touches, and where it leaves his land."

that they were to consider that the lands could not be flowed without the petitioner's paying adequate damages, evidence of an essential element in considering what these damages might be was excluded.

It is suggested that the judge had a right, in the exercise of his discretion, to exclude the evidence. But when he allowed the petitioner to go fully into a possible use of the land, and that a remote and contingent one, to reject evidence in reply tending to show such a use to be impracticable would be going beyond a legal discretion.                    *Exceptions sustained.*

*A. J. Fargo & J. A. Aiken*, for the respondent.

*W. G. Bassett*, for the petitioner.