## SIMMONDS v. UNITED STATES.
### No. 12969.

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1952.

Charles R. Garry, Julius M. Keller, San Francisco, Cal., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., M. Mitchell Bourquin, Sp. Asst. to the Atty. Gen., Roger P. Marquis and Harold S. Harrison, Attys., Department of Justice, Washington, D. C., for appellee.

Before STEPHENS, HEALY and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

In furtherance of the Sacramento River Improvement Project which is being administered by the Secretary of the Army under the authority of the Act of April 24, 1888, c. 194, 25 Stat. 94, 33 U.S.C.A. § 591, and the River and Harbor Act approved August 30, 1935, c. 831, 49 Stat. 1028, as amended July 24, 1946, c. 595, 60 Stat. 634, the United States has condemned the fee simple title in a parcel of land, designated as Tract No. 7, abutting the Sacramento River almost opposite the City of Sacramento, the capital of the State of California. The land condemned has been used by the United States since 1945 as a depository for spoil accumulated from the improvement of the Sacramento River channel. Harry Simmonds, the owner of Tract No. 7 at the time of the condemnation, contended at the proceeding before the District Court that the taking of the fee

title was a violation of the Fifth Amendment in that he had been deprived of his property without due process of law. Simmonds argued that the United States did not need the fee title in Tract No. 7 in order to dump spoil thereon; that at most a 15-year easement would have satisfied the needs of the government for the improvement project and that, therefore, the excess title condemned was property taken without due process of law.

At the condemnation hearing before the District Court the judge found that Tract No. 7 consisted of 18.27 acres, the fee title in which had been properly condemned by the government. And a jury determined the value of the property to be $375 per acre, plus $1250 for the improvements on it. Simmonds appeals from all three findings.

### Easement v. Fee

This action was commenced by the Attorney-General pursuant to a request of the Acting Secretary of the Army with a complaint in condemnation filed August 5, 1947. In the complaint the United States sought an "easement for a period of 15 years." The complaint was amended January 16, 1948, to make the period of the easement run from June 15, 1943. But on November 8, 1948, the complaint was amended to condemn the fee simple title to the land here in issue.[1] Simmonds takes the position that since the amended complaint *"did not set forth any additional reasons for the increased estate, nor show the necessity or authority for the taking of the fee in place of the easement previously taken,"* the United States had exceeded its power of eminent domain.

The taking of property or an interest in property, by eminent domain is permissible only when the property so condemned will be devoted to a public use. United States v. Certain Lands in City of Louisville, 6 Cir., 1935, 78 F.2d 684, 686; United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843. Since Tract No. 7 was condemned for use in connec-

tion with the Sacramento River Improvement Project as authorized by Congress, River and Harbor Act, supra, there can be no question but that the condemnation was for a public purpose. The question in issue here, however, is whether the United States is seeking to condemn more than it can legally take through action under its eminent domain powers.

Discretion regarding the acquisition of property by the exercise of the power of eminent domain, rather than by direct purchase, lies with any federal officer acting under the mandate of Congress. Congress has established as the standard for the exercise of discretion the "opinion" of an authorized official that condemnation would be "necessary or *advantageous* to the Government". [Italics ours] 40 U.S.C.A. § 257. In exercising its power to condemn, "the government, just as anyone else, is not required to proceed oblivious to elements of cost." United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 554, 66 S.Ct. 715, 719, 90 L. Ed. 843. And the fee title may be condemned in order to salvage the value of improvements which were placed upon land leased by the Government. Old Dominion Land Co. v. United States, 1925, 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162. Therefore, where the statute which is being implemented contains Congressional authority to take property by eminent domain proceedings (here the River and Harbor Act), the officer authorized to act is under the duty of exercising his discretion as to the estate he elects to take. His discretion so exercised is subject to be attacked only for plain abuse or fraudulent action.

In a letter dated October 12, 1948, the Secretary of the Army notified the Attorney-General that "[i]t has been determined to be advisable to change the estate taken in Tracts 7 and 8 from easements to the fee title. Accordingly, it is requested that the petition be amended to acquire the fee simple title to Tracts 7 and 8, * * *." Simmonds, in his appeal, lays great stress on the Secretary of

1. There were two other amendments to the complaint. Those amendments concerned a description of the property sought to be condemned.

the Army's use of the word "advisable", and his failure to use the word "necessary" in its place. However, as we have pointed out, necessity is not the sole standard under which property may be condemned for public use. Discretion as to the extent, amount or title of property to be taken by the United States has been conferred by legislation upon the Secretary of the Army; and in the absence of bad faith or abuse of that discretion his determination is final. United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, 392. There is no showing of bad faith or abuse of discretion in the Secretary's decision to condemn the fee title in Tract No. 7, instead of an easement.

### Number of Acres

Simmonds also assigns as error the finding of the District Court that Tract No. 7 contains 18.27 acres. He contends that the tract contains 22.65 acres. Simmonds' survey is based upon a sheriff's deed dated 1858. The government's survey is based upon a later patent from the State of California from which Simmonds' title is derived. The acreage in dispute lies between the high water and low water marks of the Sacramento River which is subject to the ocean tides. The owner of land which borders on tide-water in California takes only to the ordinary high water mark except where the grant under which the land is held indicates a different intent. Civil Code of California, § 830.[2] The patent under which Simmonds held Tract No. 7 not only made no special provision for ownership beyond the high water mark, but the area described thereby covered approximately 18.27 acres as found by the court.

### Valuation

■ The question of the valuation to be placed upon the condemned tract was submitted to a jury. They valued the land at $375 per acre, and allowed $1250 for the improvements thereon. The jury heard expert testimony submitted by both sides. The experts varied in their estimates from $300 per acre to $26,000 per acre, depending upon whether they considered the property to be best suited for commercial or residential purposes, and whether they measured by the acre or by river frontage. Nevertheless, the jury heard the conflicting testimony by qualified experts on both sides, and reached a finding which is supported by substantial evidence. Since the question of credibility is for the District Court and the award is within the range of the testimony, the award cannot be set aside on appeal. Porrata v. United States, 1 Cir., 1947, 158 F.2d 788, 791.

■ Finally, Simmonds alleges that the District Court committed prejudicial error in admitting testimony of the price which Simmonds paid for Tract No. 7 in 1944 to be admitted as evidence of the 1948 value.[3] He contends that the 1944 purchase date was too remote from the 1948 valuation date to be of any probative value; and that the low purchase price unduly prejudiced the jury in fixing the value of the property. However, compensation for condemned lands is measured by market value, and the price paid at prior sales of the same property, reasonably recent and not forced, are evidence of market value. United States v. Becktold Co., 8 Cir., 1942, 129 F.2d 473, 479; United States v. Ham, 8 Cir., 1951, 187 F.2d 265, 269. The only evidence offered to show an increase in the market value of Tract No. 7 over the 1944 purchase price was the opinion of experts which was challenged by other expert opinion. The potential value of the land after the Sacramento River Project is completed is only speculative as to its effect on the 1948 value of the property, whereas the 1944 purchase price affords a basis from which the 1948 value can be measured in light of the economic development of the

2. Sec. 830. Land Bordering Navigable Waters.—"Except where the grant under which the land is held indicates a different intent, the owner of the upland, when it borders on tide-water, takes to ordinary high-water mark; when it borders upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream, at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

3. It was stipulated that the 1948 valuation of the property should govern the award.

308

area, the general increase in land values through the years, and the physical improvements with relation to the property. Any changes in circumstances between 1944 and 1948, as they affect the value of the property, would go to the weight to be given to the 1944 purchase price, but not to the admissibility of such evidence. United States v. Becktold Co., supra.

Affirmed.