ANNA R. TIGAR *vs.* MYSTIC RIVER BRIDGE AUTHORITY.

Suffolk.    October 8, 1952. — December 1, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Eminent Domain,* Damages.    *Evidence,* Opinion: expert; Of value.
    *Damages,* Eminent domain.    *Value.*

In an assessment of damages for a taking by eminent domain of a lot
    of land having a vacant building on it, certain testimony by a quali-
    fied real estate expert stating the estimated cost of work remaining
    to be done at the time of the taking to complete a development then
    in progress of the lot and other land as a commercial refrigeration
    plant must be construed in the circumstances as a statement of the
    landowner's estimate of such cost rather than that of the witness
    himself, and it was error to allow the witness thus to give the opinion
    of another indirectly.

PETITION, filed in the Superior Court on May 10, 1949.

The case was heard by *Buttrick,* J., without a jury.

*Arthur V. Sullivan,* for the respondent, submitted a brief.

*Sidney G. Brown,* for the petitioner.

WILKINS, J.    This is a petition for the assessment of
damages under G. L. (Ter. Ed.) c. 79, for the taking of
land[1] of the petitioner at 48–50 Second Street, Chelsea.    The
respondent made the taking for the construction of the
bridge authorized by St. 1946, c. 562.    The judge found for
the petitioner in the amount of $8,900 with interest.    The
respondent's exceptions are to the admission in evidence of
certain testimony of one Breen, who was called as a witness
by the petitioner and qualified as a real estate expert.

The parcel taken was at the corner of Poplar Street, had
a frontage on Second Street, and contained about two thou-
sand square feet.    One side bounded on a five foot passage-
way leading into Second Street.    The passageway was for

---

[1] The petition also was for the taking of a parcel on Williams Street, but
that is not material to the bill of exceptions.

the use of occupants of this parcel in common with others on Poplar Street and also of the petitioner as owner of two other parcels at the corner of Second and Walnut streets, which were numbered 43, 45, and 47 Walnut Street and in the rear bounded on the passageway. No part of the Walnut Street parcels was taken, but damages were sought as to them. On the parcel at 48–50 Second Street at the time of the taking there was a vacant three story brick building, nearly all the windows of which had been bricked in by the petitioner, who had caused the partitions and other portions of the interior to be removed. Some work also had been done on the roof of the building at the corner of Walnut Street.

The petitioner's husband testified that he was the treasurer and general manager of Tigar Refrigeration Company of which the petitioner was president, and that the various parcels had been acquired for the purpose of being developed as a single unit for use by that company. One building on Walnut Street was to be remodeled as an administration building and as a show room for its business of commercial refrigeration, and the property at 48–50 Second Street was to be remodeled as a freezer building, the two to be connected by a bridge over the passageway. Some time after 1946, as a result of a conversation in which the chairman of the respondent advised him to do no more work because the property might be taken, the petitioner's husband caused work to be stopped.

The assessed values for the three years prior to the taking were: 48–50 Second Street $3,500, and 43–47 Walnut Street $8,000. The parcels were purchased at three different times.

The only other evidence of value or damage introduced by the petitioner was the testimony of the witness Breen. Because of a dispute as to its meaning, it must be stated in detail. The witness, after referring generally to the petitioner's scheme to develop the property for a particular use by the refrigeration company, testified: "The premises, according to the plans which I saw, and having in mind the condition of the property as I viewed it, were in the process

of being converted to the uses of a concern which catered to persons who needed deep-freeze equipment and who had occasion to require storage of deep-frozen products. As a test of the value of the property before the taking, in order to arrive at an opinion, I estimated the value that it would have when the work which was then in progress was completed, in order to arrive at a figure which buyers and sellers would have in mind in considering the purchase." Counsel for the respondent asked the witness to repeat his last statement, and the latter continued: "As a test of the value of the property before the taking, I estimated that the value which the property would have when it was completed in accordance with the plans and specifications that were brought to my attention, and I deducted the owner's estimate of the cost of the work which remained to be done as of the time of the taking. This figure — " Counsel for the respondent objected "if you're going to give the figure." The judge, subject to the respondent's exception, said, "I'll allow it." The witness continued: "I considered that this figure would be the figure that would be in the minds of buyers and sellers that would be considering the purchase and sale of the property as it stood at the time of the taking. Following out this test, I measured the area of the structures at 48 to 54 Second Street and 45 to 47 Walnut Street, and found an area of about 12,600 square feet. I gave consideration to the probable reproduction cost, or the cost of building a structure with 12,600 square feet for these purposes about the time of the taking and I gave consideration to the depreciation factor from such a structure, and arrived at a figure that represented the depreciated reproduction cost of about that amount of space for that purpose, to which I added the land value of the site. If the remaining work that had to be done in connection with completing the freezing plant cost $20,000, on that computation I arrived at a value of the property as a whole before the taking of $22,500 by that test. I also considered what the rental value of the space would be and arrived at a figure of fifty cents a square foot, which would return eight per cent on

the investment and five per cent for real estate taxes and four per cent for depreciation on an investment of $37,100 under this test. If the cost of the remaining work was $20,000, the value of the parcel as a whole before the taking by this test was $17,100. Taking into account these two tests, and with general reference to my experience and knowledge of the value of similar structures for similar purposes and other places and for the highest and best uses which in my opinion was its use for the purposes of a concern engaged in the sale of deep-freeze equipment and the storage of deep-freeze products, I came to the conclusion that the fair cash value of the property before the taking was $23,000. The measure of damage resulting in the severance of the Second Street property I estimate to be equivalent to the difference between $23,000 and $3,000, which in my judgment was the value of what remained after the severance of the Second Street parcel."

The usual test is the fair market value of the property at the time of the taking. *Maher* v. *Commonwealth,* 291 Mass. 343, 348. G. L. (Ter. Ed.) c. 79, § 12. And the judge so stated in making a ruling not now material. Fair market value "means the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market." *Epstein* v. *Boston Housing Authority,* 317 Mass. 297, 299. In ascertaining that value, the uses to which the property might probably be applied may be taken into consideration. *Burt* v. *Wigglesworth,* 117 Mass. 302, 306. *Fosgate* v. *Hudson,* 178 Mass. 225, 232. Or as was expressed in *Smith* v. *Commonwealth,* 210 Mass. 259, 261, "all the uses to which the property is reasonably adapted may be considered. If it is so exceptionally fitted for a municipal water supply and the necessity for such use is so imminent as to add something to its present value in the minds of buyers, that element may be considered. . . . It is only in those rare instances, when property is of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value, that the standard of special value may be

resorted to." *Maynard* v. *Northampton*, 157 Mass. 218, 219.

"But market value is not a universal test, and cases often arise where some other mode of ascertaining value must be resorted to." *Beale* v. *Boston*, 166 Mass. 53, 55. Where the property is not commonly bought or sold, to confine the owner to the testimony of witnesses who could testify as to its value by their knowledge of sales of similar property would deprive him of the right to show its true value. In such a case, "it is proper to allow testimony to be given of its value for the special purpose for which it is used . . . by persons who show themselves qualified to testify thereto from knowledge derived from experience in their own business in which they have dealt with similar property. The value of land actually used for manufacturing purposes is an illustration of property of this description . . . [T]he usual rule should be departed from and testimony of this kind admitted only when without it it is impossible to prove the value of the property in question." *Cochrane* v. *Commonwealth*, 175 Mass. 299, 302–303. See *Conness* v. *Commonwealth*, 184 Mass. 541, 543–544; *Assessors of Quincy* v. *Boston Consolidated Gas Co.* 309 Mass. 60, 64–65; Nichols, Eminent Domain (3d ed.) § 12.32. The burden is on the owner to show that it is impossible to prove the value of the property without dispensing with the usual rule. *Sargent* v. *Merrimac*, 196 Mass. 171, 175. *Davenport* v. *County of Franklin*, 277 Mass. 89, 93.

A speculative future development cannot be shown. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. See *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 209 Mass. 298, 314–315; *Mann* v. *Scituate*, 260 Mass. 592, 593. Thus, evidence of the rental value should vacant land be improved by the erection of buildings has been held to be too prospective and indefinite in its nature to be competent evidence of present value. *Burt* v. *Wigglesworth*, 117 Mass. 302, 306. *Gardner* v. *Brookline*, 127 Mass. 358, 362. *Fales* v. *Easthampton*, 162 Mass. 422, 425–426. *Greenspan* v. *County of Norfolk*, 264 Mass. 9, 11. Likewise

it has been held error to permit an owner to testify as to the probable future use of his remaining land. *Pinkham v. Chelmsford,* 109 Mass. 225, 228. *Fairbanks* v. *Fitchburg,* 110 Mass. 224. See *Old Silver Beach Corp.* v. *Falmouth,* 266 Mass. 224, 227. Nevertheless the admissibility of testimony to show value for a special purpose may be to some extent a matter in the discretion of the trial judge. *Sargent* v. *Merrimac,* 196 Mass. 171, 174. *James Millar Co.* v. *Commonwealth,* 251 Mass. 457, 464. *Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372, 383.

In the case at bar the property, the judge could have found, had been in the course of renovation which was discontinued because of the impending taking. At the time of the taking the building resembled a hollow shell almost completely enclosed on all sides. Obviously, there might be no ready market for it. It could have been found to be something not commonly bought or sold. The intended use of all the petitioner's parcels as a unit was more than a plan for the future, for it could have been found to be a project which was already under way. In so far as the discretion of the trial judge was exercised in favor of admitting testimony of value for a special purpose, we would not be inclined to reverse his ruling.

The precise exception, however, was to giving in evidence the owner's estimate of cost. The witness's answer was interrupted by the ruling and the saving of that exception, and after he resumed, he used from some source a figure of $20,000 for the cost of the unfinished work. It is not clear beyond all doubt that the figure used was the owner's estimate. The petitioner, indeed, argues that the witness was giving his own calculation, but it seems inconceivable that this would have been permitted had it been apparent that this was what he was doing. After all, he had qualified as an expert in real estate, not in engineering or in the construction of refrigeration plants. So, on the question of interpretation, we think that "this figure," as used by the witness, was in its context to be taken as being the owner's estimate of cost. At no time did the witness state that

$20,000 was his own estimate, and he phrased that part of his testimony conditionally, "If the remaining work that had to be done in connection with completing the freezing plant [would] cost $20,000." He could not, however, give the opinion of another in that indirect manner. The engineer or builder who made the estimate should have been produced and qualified as a witness competent to give his own opinion if that was sought to be shown. *Cushing* v. *Nantasket Beach Railroad,* 143 Mass. 77, 78–79. *Hunt* v. *Boston,* 152 Mass. 168, 171. *Greenspan* v. *County of Norfolk,* 264 Mass. 9, 12. See *Flaherty's Case,* 316 Mass. 719, 723–724.

*Exceptions sustained.*