John C. ARP and Mildred K. Arp,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 5524.

United States Court of Appeals
Tenth Circuit.

April 23, 1957.

J. J. Hickey and Norman B. Gray, Cheyenne, Wyo., for appellants.

Roger P. Marquis, Atty., Dept. of Justice, Perry W. Morton, Asst. Atty. Gen., and John H. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal by the appellants, the Arps, from a taking by the Government of 30.89 acres owned by them by condemnation.

The land in question lies within the limits of the City of Cheyenne, Wyoming. In 1943 the Government instituted this action to condemn an estate in the tract. The interest sought and acquired in the original condemnation proceeding was the exclusive use and occupancy of the tract for one year, with the right of renewal from year to year for the duration of the war emergency and for three years thereafter, together with all .improvements placed thereon and with a right to remove any and all such improvements.[1]

The Government entered upon the premises, constructed housing facilities, and operated the estate acquired as Van Tassell Terrace. The Government's rights were renewed from year to year up to December 22, 1954, when the tender of the rent for the 1954–1955

1. The leasehold estate was condemned for the purpose of erecting defense housing units under the Lanham Act of Oct. 14, 1940, as amended 42 U.S.C.A. § 1521 et seq.

year was rejected by the Arps. In May, 1955, they filed a motion to terminate the condemnation pursuant to 42 U.S.C.A. §§ 1524, 1592d (c), which provides that land acquired under the sub-chapter and retained after June 30, 1954, without having been used for the purposes of the Act should be returned to the owners. This motion was not acted upon by the court. In the meantime, Congress had terminated the war emergency effective June 30, 1953, which meant that by the terms of the judgment the Government's leasehold estate interest would expire July 1, 1956.

Rather than return the property, the Government, relying on the Lanham Act as amended, 42 U.S.C.A. §§ 1521 et seq., especially § 1585(a), filed a supplemental complaint in the original proceeding for condemnation and a declaration of taking of the fee title to the tract in question because of the determination by the Acting Public Housing Commissioner that the acquisition of the fee simple title was necessary to continue in use the housing constructed on the lands in the orderly demobilization of the war effort, to maintain the improvements constructed thereon, and to protect the Government's interest in the improvements.

42 U.S.C.A. § 1585(a) provides that the Administrator may continue by lease or condemnation any interest less than a fee simple interest in lands by prior acquisition for national defense or war housing or veterans' housing, whether of a permanent or temporary character, or held by any federal agency in connection therewith, and it authorized the acquisition by purchase or condemnation of a fee simple title to or a lesser interest in any such lands if the Administrator determined that the acquisition of such fee simple or lesser interest was necessary to protect the Government's interest or to maintain the improvements constructed thereon, or that the cost of fulfilling the Government's obligation to restore the property to its original condition would equal or exceed the cost of acquiring title thereto.

The Arps set up three defenses to the Government's declaration of taking. They are (1) that the action of the Administrator in taking the fee was not necessary in connection with the demobilization of the war effort, and that it was not necessary to maintain the improvements since the Government already had possession by virtue of the leasehold estate, and that it could thereunder maintain possession for a substantial period; (2) that the acquisition of the fee was not necessary to protect the investment of the Government in that it had the right of possession for the duration of the emergency and three years thereafter, in order to realize the greatest possible salvage out of the improvements by appropriate salvage or liquidation proceedings open to it; (3) that the Government had already realized in net rental far in excess of its investment, and that the defendants offered to pay the Government the full value of the remaining housing improvements to be arrived at by fair appraisal, and that the determination and acquisition of the fee was necessary to protect the investment of the United States was arbitrary and made in bad faith. The court struck these three defenses as not being defenses to the taking of the fee.

■ The assignments will be considered in the order of presentation. The first assignment urges three grounds for reversal. It is contended that the original judgment vesting the leasehold estate was a consent judgment and that, therefore, the court was without power to enlarge, diminish or destroy vested rights accruing thereunder. It must be conceded that the original judgment was a consent decree and that it was a final and conclusive adjudication between the parties thereto. But that does not support appellants' argument. It was a final adjudication only of the issues involved in that litigation. The only rights involved were the rights to a leasehold estate. The object of the supplemental complaint was not to set aside, vacate, or in any manner disturb the interest condemned therein. As to the leasehold in-

terest, the original judgment constituted res judicata. But that would not prevent the Government from condemning an additional interest in the property under existing statutory authority.

42 U.S.C.A. § 1585(a) confers power upon the Administrator to condemn the fee title if it is deemed necessary to protect the Government's interest or if the cost of restoring the property to its original state would equal or exceed the cost of acquiring the fee title thereto. In United States v. 6.74 Acres of Land, etc., 5 Cir., 148 F.2d 618, under somewhat similar circumstances it was held that the fact that the Government was in possession under a lease did not prevent it from condemning the fee.[2]

■■ The second argument under the first assignment is that the court violated Rule 15(d) Fed.Rules Civ.Proc., 28 U.S.C.A. in permitting the filing of the supplemental petition for condemnation in the original proceeding. It is true that the Rule required notice of an application to file a supplemental pleading and that the requirement for notice to the adverse party was not complied with. At no time did the Arps present this point to the trial court in any manner. Instead, the answer joined issues upon the causes pleaded in the complaint. The granting of a right to file a supplemental petition related to procedure. The granting of such leave is discretionary and will not be disturbed on appeal unless grossly abused.[3] Had the court refused permission to file an amended complaint, the Government could have proceeded by an original complaint in an independent action, and the identical issues would have been presented and determined. We find no abuse of discretion by the trial court with respect to this matter. Furthermore, by failing to object and by pleading to the supplemental complaint, appellants waived any procedural irregularity arising out of the failure to give notice of the application for permission to file a supplemental petition.

It is contended that the former judgment is res judicata and bars this proceeding. Of course, that judgment is res judicata as to all the issues adjudicated and may not be altered, but all there was involved in that proceeding was the leasehold estate. The Government now seeks the fee title interest in the property. That interest was not involved in the first condemnation proceeding and is, therefore, not affected by that judgment.

■■ It is next urged that the court erred in striking appellants' amended answer. The gist of the amended answer was that the Administrator was without statutory authority to determine that the taking was necessary in the orderly demobilization of the war effort. It further alleged that the original judgment gave the Government the exclusive use for a year without right of renewal; that appellants had not interfered with such right and that the Administrator's determination to take the fee title was without factual foundation and was arbitrary and capricious. It also challenged the Government's right to salvage its investment by taking title and reselling the property. The contention is made that such construction of the statute would violate due process.

The asserted defenses are without merit and the amended answer was properly stricken. 42 U.S.C.A. § 1585(a) expressly confers power to acquire the fee title if the Administrator determines that it is necessary to do so to protect the Government's interest or if the cost of fulfilling the Government's obligation to restore the property would equal or exceed the cost of acquiring the title thereto. Nor is there any basis for the contention that the Administrator's ac-

---

2. See also United States v. Village of Highland Falls, 2 Cir., 154 F.2d 224; 108 A.L.R. 1522; 18 Am.Jur., Eminent Domain, § 26, p. 650.

3. Schuckman v. Rubenstein, 6 Cir., 164 F. 2d 952; Missouri-Kansas-Texas Railroad Co. v. Randolph, 8 Cir., 182 F.2d 996; Fleetwood v. Milwaukee Mechanics' Ins. Co., D.C., 87 F.Supp. 353.

tion was arbitrary or capricious. Appellants' argument that the Administrator's determination was capricious is predicated on the contention that the Government had recouped its investment in the improvements and that the only purpose of the taking was to realize a profit from a quick sale. This contention is argumentative and not factual, and in any event has no bearing on the motive of the Administrator. The Government was free to adopt the method it considered best suited to protect and save the investment it had in this project and appellants had no complaint so long as they received just compensation for their property.

It is also urged that the verdict of the jury is not sustained by the evidence. The jury returned a verdict for appellants of $75,000. A number of expert witnesses testified to value. There was a great variation in the evidence as there generally is in such a case as to the value of the property. Some witnesses placed it as low as $47,500, others as high as $182,000. The question of value is a fact question for the determination of the jury. It was properly submitted to the jury under appropriate instructions and its determination finds support in the evidence submitted to it.

And finally it is urged that the court erred in admitting in evidence the testimony of witness John C. Arp respecting the price he paid for the land at the time of its transfer to him. He testified over objection that he paid $45,000 when he bought the entire tract consisting of 667 acres. Such evidence has relevancy and bearing on the value of the land if not too remote in point of time and when accompanied by a proper instruction.[4] The court gave such an instruction.[5] We think this instruction was adequate to guide the jury in its evaluation of this evidence.

A careful consideration of the voluminous record and detailed briefs leads us to conclude there is present no reversible error.

Affirmed.

4. Chapman v. United States, 10 Cir., 169 F.2d 641.

5. The court's instruction in part was as follows:

"* * * evidence as to the purchase price of the larger tract of land in 1952 can be so far removed from the date with which we are concerned in fixing just compensation and by reason of the different conditions shown by the evidence to have arisen between that date and August 25, 1955, in the Court's opinion, throws little light upon the problem you have. You have before you the more pertinent testimony as to the various experts and sales which are more closely related. Merely because an owner had made an advantageous deal in originally acquiring property is no reason why he should not, as of a later time when the land is actually taken by the Government, receive its full fair market value, notwithstanding that such fair market value may be greatly in excess of the amount for which he acquired the property. And I reiterate that the question before you is not what the property may have sold for or might be worth at a different time, but what its fair market value was as of August 25, 1955."