BRUSH HILL DEVELOPMENT, INC. *vs.* COMMONWEALTH.

Norfolk. October 9, 1958. — January 15, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, &
CUTTER, JJ.

*Evidence,* Of value, Judicial discretion.

In a proceeding for assessment of damages for a taking by eminent
domain of nearly all of the southerly half of a tract in a residential
zoning district of a town bought by the petitioner five years before the
taking and in process of development in an orderly manner by the
construction of houses upon the northerly half of the tract and the
doing of work upon the southerly half indicative of progress toward
making it a residential subdivision, there was not enough in the record
to show abuse of discretion in the exclusion of certain plans relating
to the proposed development of the land taken, a stipulation by the
parties respecting tentative approval of a plan by the planning board
of the town, and evidence of the cost of stone and fill and completion
of a street needed to develop the land taken for residential purposes.
[363–364]
At the trial of a petition for assessment of damages for a taking by eminent
domain of land within a subdivision project actually under way at the
time of the taking, binding agreements then existing between the
petitioner and third persons for the sale and purchase of portions of
the land taken could have been admitted in evidence in the trial judge's
discretion to show the progress made in carrying out the project and
to show the fair market value of the land taken. [364]
At the trial of a petition for assessment of damages for a taking by eminent
domain of land in a suburban town located in a residential zoning dis-
trict of a class in which the zoning by-law permitted lots of very small
area compared to the minimum areas required for lots in residential
zoning districts of other classes, there was on the record reversible error
in excluding evidence to show that undeveloped land in the town in the
same zoning class as the land taken had become scarce at the time of
the taking and that there was a continuing demand therefor. [366]
There was no abuse of discretion, at the trial of a petition for assessment
of damages for a taking of land in a residential zoning district of a
town, in excluding evidence of the price paid in a sale at about the time
of the taking of land similar in substantial particulars to that taken
and similarly zoned but located approximately four miles therefrom.
[366–367]
At the trial of a petition for assessment of damages for a taking by eminent
domain of residential land which comprised nearly one half of a tract

undeveloped when purchased by the petitioner five years before, no
abuse of discretion appeared in admitting in evidence the purchase
price paid by the petitioner for the entire tract notwithstanding a
partial development thereof and substantial changes in the immediate
vicinity thereof during the five year period. [367]

No prejudicial error appeared at a trial in excluding on cross-examination
a question to an expert witness designed to test his knowledge.   [368]

PETITION for assessment of damages, filed in the Superior
Court on January 19, 1956.

The case was tried before *Cahill,* J.

*Thomas J. Carens,* (*Robert J. Sherer* with him,) for the
petitioner.

*Edward J. McCormack, Jr.,* Attorney General, *& Max
Rosenblatt,* Assistant Attorney General, for the Common-
wealth, submitted a brief.

CUTTER, J.   This is a petition under G. L. c. 79, § 14,
for the assessment of damages for the taking (by order re-
corded August 29, 1955, and entry on September 7, 1955)
of land in Milton for State highway purposes.   At an earlier
trial, a verdict was set aside as inadequate.   At the second
trial there was a smaller verdict.   The case is here on the
petitioner's exceptions to certain rulings on evidence at the
second trial.

The Commonwealth took approximately 12.35 acres of a
tract of about 13.26 acres owned by the petitioner.   The
land lies southwesterly of Route 128 near Houghton's Pond,
Milton, in an area zoned as a Residence C district.   The
premises taken were surrounded entirely by land of the
metropolitan district commission except on the northerly
boundary where the petitioner owns a half acre of land on
which two cellars had been built and about 60,000 square
feet of land on which two occupied houses stood.   A finished
street, Silver Brook Road, approached the northern boundary.
The petitioner, at the time of the taking, had installed most
of a surface water drainage system in the premises taken,
had cleared trees and brush from the area, had excavated
three holes for cellars, and had placed the concrete footing
for a further cellar.   The land taken was the southerly part,
about half, of a tract bought in 1950 by the petitioner, five

years before the taking. There were houses on the northerly half of the tract originally purchased. There was evidence of substantial preliminary work on roads, and in placing fill, on or near the land taken and that water mains had been brought near the land taken as a result of the petitioner's development of the northern half of the tract originally purchased.

1. The petitioner by various means tried to show the development of the land taken, planned by it at the time of the taking, and the progress made in carrying out that development. An engineer of the department of public works identified a plan of the taking superimposed upon a plan of the petitioner's land divided into house lots. The lot division was not "shown to have been from a plan . . . approved . . . in accordance with the subdivision control law." See G. L. c. 41, § 81V, as appearing in St. 1953, c. 674, § 7. However, this and other plans were excluded, although it was agreed by a stipulation (also excluded from consideration of the jury) that the Milton planning board had approved conditionally in April, 1955, a plan presented to the board by the petitioner, subject to approval of the board of health and to the posting of a bond to secure certain road construction on or before May 8, 1955. No final approval of the planning board, however, had been obtained, and the petitioner had never obtained the approval of the board of health or posted the required bond. The president of the petitioner was not permitted to testify to the computations he had made about the quantities of fill needed to complete a street in the proposed development and for use in certain low areas in the land taken and the quantity of fill obtainable by cutting away certain high land on the premises. He also was not permitted to testify with respect to certain purchase and sale agreements, in existence at the time of the taking, covering portions of the land taken. Exceptions were saved to the exclusion of each of these plans, the stipulation and other items of evidence.

In *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 518–519, it was said, "A speculative future development

cannot be shown. . . . Thus, evidence of the rental value should vacant land be improved . . . has been held . . . too prospective and indefinite in its nature to be competent evidence of present value. . . . Nevertheless the admissibility of testimony to show value for a special purpose may be to some extent . . . in the discretion of the trial judge." The court in the *Tigar* case then went on to comment on the precise facts before it, "The intended use of all the petitioner's parcels as a unit was more than a plan for the future, for it could have been found to be a project *which was already under way*. In so far as the discretion of the . . . judge was exercised in favor of admitting testimony of value for a special purpose, we would not be inclined to reverse his ruling" (emphasis supplied). Although the *Tigar* case, unlike the present case, involved a special and somewhat unusual use of land, on the issue here involved it is closely relevant. It was recognized in *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 198, that the consistent exercise of a trial judge's discretion to exclude testimony bearing on a particular aspect of the value of property may have the effect of denying to the owner the power of proving its real value. In that case, the trial judge was held to have gone beyond the range of his discretion in excluding testimony essential to proof of the petitioner's case.

Here the petitioner did succeed in showing that the original tract purchased by it in 1950 had been in process of orderly development, that houses had been constructed on the northerly half of the property, and that some progress had been made toward use of the southerly half of the property for a residential subdivision for which the land might well have its greatest value. In the light of what was in fact shown in evidence, the scheme was plainly "more than a plan for the future" (see the *Tigar* case, *supra*, at p. 519). Under these circumstances, especially viewing the development of all the land purchased in 1950 as a single project, the cumulative effect of the trial judge's rulings tended to restrict severely the petitioner's attempts to show the value

of the land taken for the very purpose for which it was zoned. This value could be realized only in the event that the efforts at development went forward in normal course. The trial judge, under a principle similar to that discussed in the *Tigar* case, in his discretion could have admitted evidence of the progress made by the petitioner at the time of the taking toward realizing the land's potential value for its most logical use, progress which would have been likely to have greatly affected the value of the land in its then state to any person interested in purchasing it at that time, if there had been no taking. The question before us is whether the judge abused his discretion in excluding the evidence.

The present record does not indicate that any plan offered in evidence was still being actively pressed by the petitioner at the time of the taking. If it be assumed (for it is not clear from the record) that the most elaborately drawn plan among the exhibits was that tentatively approved by the planning board, there was no evidence or offer of proof that this was still at the time of the taking under active consideration, particularly in view of the petitioner's failure to meet the conditions of such tentative approval. We assume that a properly described and identified subdivision plan, even if not finally approved under G. L. c. 41, § 81V, as amended, might have probative value in some circumstances in showing what had been done in carrying out the project, actually in progress. Here, however, there was no such sufficient identification of the purpose, significance, and status of any one of the plans as to require its admission in evidence.

There was no abuse of discretion in excluding the stipulation about the planning board's tentative approval of a certain plan. The trial judge was warranted in excluding the stipulation in the absence of evidence, a more complete stipulation, or an offer of proof about what plan was tentatively approved, about the status of that plan, and about the planning board action with respect to it at the time of the taking. We need not determine whether the evidence

could have been excluded without abuse of discretion, if it had been established appropriately that the planning board action had been in fact a significant step, still of importance at the time of the taking, toward making the land available for a valuable use for which it was reasonably suitable.

The trial judge in his discretion could have admitted evidence of the cost of the quantities of stone required to lay out a street to serve the vacant land taken and of the fill to make the low areas of such land suitable for the construction of houses. See *Maynard* v. *Northampton,* 157 Mass. 218, 220. Cf. *Smith* v. *Commonwealth,* 210 Mass. 259, 260–261. Such evidence would have been relevant on the issue of the practicability of using the land for the residence purposes likely to be its most valuable use. No offer of proof, however, was made after the exclusion of the testimony about filling the low areas and we cannot say that excluding the testimony was prejudicial. We also cannot say that exclusion of the testimony about the cost of completing the street was an abuse of discretion. It may have been because there had been no showing of the competency of the witness to compute the quantities of fill. See *Palm* v. *Kulesza,* 333 Mass. 461, 463.

2. The trial judge excluded testimony of the petitioner's president about existing purchase and sale agreements covering portions of the land taken. In the judge's discretion, this evidence might have been admitted to show the progress made by the petitioner in carrying out a subdivision project, actually under way. That the petitioner was able to dispose of lots in advance of adapting the land for residential construction was persuasive evidence of a demand for such adaptation and some evidence of the economic feasibility of the subdivision project. The evidence was also competent on the issue of fair market value. This court, of course, in the past has not approved the admission, as evidence of fair market value, of testimony concerning executory purchase and sale agreements, covering comparable land not taken, even though such contracts of sale (if genuine and not contrived as evidence for the occasion) may

reasonably be regarded by real estate experts and practical businessmen as helpful indications of such value. See *Chapin* v. *Boston & Providence R.R.* 6 Cush. 422, 424; *Suburban Land Co. Inc.* v. *Arlington,* 219 Mass. 539, 541. We need not now reconsider these two decisions or determine whether possible infirmities in such testimony (such as alleged lack of a genuine transaction) should not more reasonably go to the weight of the testimony than to its competency. The situation is very different with respect to binding agreements of purchase and sale of the very land taken, which constitute more than unaccepted offers, as in *Peirson* v. *Boston Elev. Ry.* 191 Mass. 223, 232–233, or options, or contracts based upon so many contingencies as to be meaningless on the issue of fair market value. Such testimony about executory contracts of sale, absolute in terms, relating to the very land taken, is much more directly relevant than if it concerned neighboring or comparable land. One text authority indicates that the present state of the law is that "[w]hile evidence respecting an executory sale of similar lands is inadmissible . . . evidence of the price fixed in a contract for the sale of the property taken, made in good faith, is admissible." Nichols, Eminent Domain (3d ed.) § 21.5. See *United States* v. *Certain Parcels of Land,* 144 F. 2d 626 (3d Cir. — Federal law); *Matter of New York (Hamilton Place),* 67 Misc. (N. Y.) 191, 193, app. dism. 143 App. Div. (N. Y.) 302, affd. 202 N. Y. 607; note, 155 A. L. R. 262, 270. See also *Manning* v. *Lowell,* 173 Mass. 100, 103–104 (sale or attempted sale of land taken, by a conveyance possibly ineffective, admitted). Cf. *School Dist. of Clayton* v. *Kelsey,* 355 Mo. 478, 484. Cf. also as to unaccepted offers, McCormick, Evidence, § 166; note, 7 A. L. R. 2d 781.

The bill of exceptions shows that an objection was sustained to the whole "line of questioning" about the purchase and sale agreements. The petitioner claimed an exception and offered to prove "that four or five lots were under purchase and sale agreements." The agreements themselves were not marked for identification and their

terms were not summarized. The offer of proof was not here broad enough and sufficiently in detail to show the relevance and propriety of the expected testimony and the fact that the exclusion of the testimony was prejudicial. Although the witness was prevented from testifying at all upon the agreements for sale, it was not upon the grounds of the competence of the witness as in *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 199, and cases cited. However, because another exception must be sustained, we need not consider whether under the circumstances the petitioner's offer of proof was inadequate or necessary at all.

3. The assistant town engineer of Milton called by the petitioner was not permitted to testify about the extent of other undeveloped Milton land zoned for Residence C use in 1950 and 1955. The purpose was to show that such land was scarce and growing more scarce. The judge would admit the evidence as of 1955 only to show "the general surroundings of the land taken." There was an offer of proof that the amount of undeveloped land in Residence C zones was sharply reduced between 1950 and 1955. The evidence was admissible to show not only that undeveloped Residence C land in the town was scarce but also that there had been continuing demand for it. The Milton zoning by-law (with exceptions not here pertinent) permitted lots of a minimum area of 7,500 square feet in Residence C districts, whereas in Residence A districts the comparable minimum was 40,000 square feet and in Residence B districts 20,000 square feet. We take judicial notice that Milton is a pleasant suburban residential area very close to Boston and with convenient access to the city. In such an area, the limited availability of areas where 7,500 square foot lots were permitted would be very likely to have a significant impact on the market value of the available areas. The exception to the exclusion of this testimony must be sustained.

4. A real estate expert called by the petitioner was not permitted to testify to the price paid upon the sale of certain other undeveloped Residence C land in Milton at about

the time of the taking.  The petitioner saved an exception and made an offer of proof.  The land thus sold was about four miles from the petitioner's land and differed from the petitioner's land in some respects, principally in that the planning board had finally approved the subdivision of the land sold and that it could have been found to have had somewhat better access to public ways than the petitioner's land.  The differences between the two parcels do not seem very great and substantial similarities appear.  We assume that the judge, in his discretion, might have admitted the testimony in view of the scarcity in Milton of undeveloped Residence C district land.  We cannot say, however, that his failure to do so was an abuse of discretion, in view of its distance from that here in question.  *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359.

5. The Commonwealth, subject to the exception of the petitioner, was permitted to show the price paid by the petitioner for the entire twenty-four acre tract purchased in 1950.  There had been substantial changes in the immediate vicinity between 1950 and the taking in 1955, including the subdivision of the northerly half of the tract and the construction of streets and other facilities nearby.  It could have been found that sufficient changes in the general area had taken place in the five year interval to make the price paid in 1950 irrelevant.  We probably would not have disturbed the action of the judge if he had excluded the testimony as relating to a sale too remote in time, but we cannot say that its admission, standing alone, was an abuse of the judge's discretion.  *Lembo* v. *Framingham,* 330 Mass. 461, 463.  See *Simmonds* v. *United States,* 199 F. 2d 305, 307–308 (9th Cir.); *Arp* v. *United States,* 244 F. 2d 571, 575 (10th Cir.).  In view of the judge's consistent exercise of discretion to exclude evidence of the rapid development of the immediate area and of the growing scarcity of land similarly zoned, the petitioner was seriously hampered in showing considerations which might lead the jury to give the 1950 price little weight.  The admission of this

price is an additional reason for regarding as erroneous and prejudicial the exclusion of testimony of the growing scarcity of undeveloped land in Residence C districts (see par. 3 above).

6. An expert called by the Commonwealth was asked on cross-examination "whether, when he made his appraisal [of the petitioner's land], he knew that there had been a change in zoning . . . of land adjoining the . . . [petitioner's] land." The petitioner duly excepted when the question was not allowed. The adjacent land had been rezoned prior to March, 1952, and placed in a Residence B zone, but earlier in the trial the petitioner had not been permitted to show this fact. The question was a proper method of testing by cross-examination the knowledge of the expert witness. Standing alone, its exclusion is not prejudicial error in view of the breadth of discretion given to a trial judge as to the scope of cross-examination. The judge's action, however, both in excluding the fact of the zoning change and in refusing to permit testing of the expert witness, was further action preventing the petitioner from showing and relying upon the increasing scarcity of undeveloped land in Residence C districts.

*Exceptions sustained.*