JOHN P. FORD & another vs. CITY OF WORCESTER.

Worcester. September 21, 1959. — November 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Evidence*, Of value; Offer of proof; Judicial discretion; Opinion: expert. *Eminent Domain*, Damages. *Damages*, Eminent domain. *Practice, Civil*, Exceptions: whether error harmful. *Error*, Whether error harmful.

An inquiry by counsel to the judge when he refused to allow a question, whether the judge "would like to have counsel make an offer of proof," and the judge's reply that he "simply excluded the question," did not show that the judge waived the requirement of making offers of proof then and thereafter. [658]

Where a witness at the trial of a petition for assessment of damages for a taking of land was treated by the judge as qualified to testify on an issue and was permitted to give testimony on that issue, a refusal to allow certain questions asked him on direct examination did not disclose prejudicial error in the absence of offers of proof. [659–660]

No abuse of discretion was disclosed at the trial of a petition for assessment of damages for a land taking in a refusal to allow a witness, qualified to testify as to the adaptability of the land for a certain use but not qualified to express an opinion on market value, to testify as to matters relating to adaptability where other witnesses, qualified to testify as to market value, had taken such matters into account in reaching their opinions and were given adequate opportunity to state the bases of their opinions. [660–661]

At the trial of a petition for assessment of damages for a land taking, where a qualified expert witness testified to an opinion about market value and his reasons therefor and stated what he thought was the "highest and best use" of the property in question, no error was disclosed in a comment, made by the judge during the witness's testimony, that, although he could give reasons for "his values," "the measure of damage here is not the highest and best use of the property." [662–663]

PETITION, filed in the Superior Court on August 12, 1954. Following the decision by this court reported in 335 Mass. 723, there was a second trial of the case before *Nagle*, J.

*Charles W. Proctor*, for the petitioners.

*Harry J. Meleski*, City Solicitor, & *Henry P. Grady*, Assistant City Solicitor, for the respondent, submitted a brief.

CUTTER, J. This is a petition under G. L. c. 79 to assess damages for the city's taking of 66.57 acres of a tract of land containing 71.79 acres, owned by the two petitioners, Mr. and Mrs. Ford. On the remaining 5.22 acres were the petitioners' house and barn, and certain outbuildings and poultry buildings. Ford had conducted a poultry farm on the premises from 1944 to 1948 when he had fifteen hundred laying hens. In 1949, and again in 1950, he was forced to sell his hens. He then "went back to working for wages." The jury found damages of $5,940. The petitioners' bill of exceptions raises principally exceptions to the exclusion of evidence. The case has previously been before this court. See *Ford* v. *Worcester*, 335 Mass. 723.

1. The petitioners' counsel made no offers of proof when evidence was excluded. It is argued that the trial judge in effect had waived all offers of proof in excluding a question early in the trial. One Boucher, an agricultural agent from the county extension service, had testified that there "were several kinds of poultry farms." He was then asked, "Can you tell me what they are?" The petitioners claimed an exception to the trial judge's refusal to allow the question. The petitioners' counsel "then asked if the court would like to have counsel make an offer of proof." The judge replied, "I simply excluded the question."

This statement of the judge was not a refusal to entertain an offer of proof. It was at most an indication that counsel must determine whether to make an offer of proof or to proceed with another question. In the absence of offers of proof concerning questions on direct examination of witnesses, there is no showing that it was prejudicial to refuse to admit most of the excluded evidence. See *Smethurst* v. *Barton Square Independent Congregational Church*, 148 Mass. 261, 266–267; *Ross* v. *Nourse*, 330 Mass. 666, 670; *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 364. Accordingly, there is occasion to discuss here only those few ex-

clusions of testimony, mentioned below, as to which it can plausibly be argued that no offer of proof was necessary.

2. No offer of proof, of the evidence expected in answer to a question asked on direct examination, has been required in certain cases where the trial judge in effect has treated the witness as not qualified to testify at all on a particular issue or has prevented all testimony on that issue. *Muskeget Island Club* v. *Nantucket*, 185 Mass. 303, 306. *Old Silver Beach Corp.* v. *Falmouth*, 266 Mass. 224, 226–227. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 199. See *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 365–366; *Joseph De Vries & Sons, Inc.* v. *Commonwealth, post*, 663, 664–665. Cf. *Southwick* v. *Massachusetts Turnpike Authy., post*, 666, 668, where, because offers of proof were in fact made, it was possible to appraise the effect of the exclusion of excluded testimony.

The rule of the decisions just cited clearly had no relevance to the testimony of certain witnesses called by the petitioners. Ford himself, as one of the petitioning owners, was permitted to testify at length about his opinion of the value of the property before and after the taking and to give reasons for that opinion. He was allowed to state that "[d]epreciation in the value of the homestead . . . [$10,000 in his opinion] was due to the fact that he had only 5¼ acres left which was insufficient for a poultry farm"; to give in great detail the history of his poultry venture; and to describe the nature of improvements made by him on the property and various elements of value in his original property, including the quantities (see *Kinney* v. *Commonwealth*, 332 Mass. 568, 571–572; cf. *Davenport* v. *Haskell*, 293 Mass. 454, 458; *Lawrence* v. *O'Neill*, 317 Mass. 393, 396–397; *Cogliano* v. *Commonwealth*, 334 Mass. 354, 357–360), but not the value, of standing timber. He was not treated as entirely unqualified to testify upon value nor was he prevented from testifying at all on particular relevant facts which might reasonably affect his opinion on the ultimate issues of (a) the market value of land taken and (b) the market value before

and after the taking of the petitioners' remaining land. See *Southwick* v. *Massachusetts Turnpike Authy.*, *post*, 666, 669–671. In these circumstances, counsel was not excused, by the principle of the cases earlier cited, from the requirement that he support each exception by an offer of proof. In the absence of such offers, we cannot say that the petitioners were harmed by the refusal to permit any questions asked of Ford.

Most of the testimony of the agricultural agent, already mentioned, was excluded subject to the petitioners' exceptions, and he was in effect prevented from testifying on several issues. He admittedly was not an "appraiser" of chicken farms although "familiar with . . . [their] purchase and sale." He was obviously qualified, however, to testify about the adaptability of the property, before and after the taking, for chicken farming. Nevertheless, he was not permitted to describe the "several kinds of poultry farms"; to indicate whether (after the taking) the property was sufficient to support a poultry farm; or to state the number of hens required for "an adequate poultry farm for laying hens," or the area required for such a farm, or the capacity for laying hens of the buildings owned by the petitioners. Recalled later as a witness, he was not permitted to state "how much range would be necessary . . . [for] a flock [of laying hens] of the size . . . adapted for the buildings"; or to give his opinion about "the adaptability of the land remaining . . . for a commercial chicken business" or whether this remaining land "could have been sold . . . for a chicken farm."

The premises had been used for a chicken farm prior to 1950 and still contained buildings which had been used for chicken farming. When the agricultural agent testified, however, apart from the fact of former use for chicken farming (which had been established by Ford's testimony), the most substantial evidence in the case that adaptability of the premises for chicken farming contributed to the market value of the premises was a statement of Ford that "[p]ossibly the highest and best use for the property was

for farming purposes." Ford had been allowed to testify that about 750 square feet of a chicken range at the northerly end of the land had been taken and that after the taking he "had a house with outbuildings that were out of balance" in that he "no longer had sufficient land to have a livelihood-producing farm." He had thus given consideration in forming his opinion to the background facts about which Boucher was being asked to testify. See *Southwick* v. *Massachusetts Turnpike Authy., post,* 666, 670–671.

Where the property had been so recently used for chicken farming, this was plainly a potential use of the property which might bear directly upon and augment its market value. *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517, and cases cited. It would have been appropriate, as a matter of background, to give the petitioners reasonable leeway in making proof whether and to what extent the taking rendered the property less usable for this purpose. We cannot say, however, that the trial judge abused his discretion in refusing to permit this witness, who was not himself qualified to express an opinion on market value, to testify in detail about circumstances possibly affecting market value which the witnesses, who were qualified to testify on market value, obviously had taken into account adequately in reaching their opinions. Particularly is this true where such qualified witnesses were given opportunity to state the basis of their opinions in reasonable detail.

With respect to certain disallowed questions about the permits for building near the petitioners' land, issued in 1953, and about development of the neighborhood, asked of the assistant town clerk, no offers of proof were made. The witness was permitted to answer questions about actual building construction in the neighborhood of the petitioners' land and about the population, buildings, and roads in the neighborhood. In the absence of offers of proof we cannot say that disallowance of the questions was prejudicial, despite the fact that the petitioners were entitled to show reasonably the general character and the then state of development of the neighborhood as bearing upon the issue

of market value. See *Williams* v. *Taunton*, 125 Mass. 34, 41; *Brush Hill Dev. Inc.* v. *Commonwealth*, 338 Mass. 359, 361–363, 366.

3. One Bowker, a qualified real estate expert, gave his opinion about the fair market value of the property before and after the taking, and stated that "[t]he highest and best use [of this property] was for a residential development." He was allowed later to trace in some detail the character and size of lots which he thought could be obtained from this property. Cf. the complete exclusion of opinion testimony, and of the reasons therefor, held to be erroneous in *Southwick* v. *Massachusetts Turnpike Authy.*, *post*, 666, 668–671. The witness was asked to state his "reason for saying that . . . [residential development] was the best available use." The trial judge refused to permit the question, and no exception was taken to this action. In commenting on the exclusion of the question, the judge said, "He [the witness] may give the reasons for his values . . . the measure of damage here is not the highest and best use of the property. You may ask him if he has certain reasons that he used or some formula that he used in arriving at these values." The petitioners claimed an exception to the "ruling . . . that the measure of damages is not the highest and best use of the property."

There was no error in the judge's statement. The issues being tried were (a) the market value of the land taken on the date of the taking and (b) the depreciation in the market value of the petitioners' remaining land caused by the taking. In expressing an opinion about market value, a qualified witness may take into account all available uses for which the land is adaptable "with a view of ascertaining what the property is worth in the market for any use for which it . . . [will] bring the most." See *Conness* v. *Commonwealth*, 184 Mass. 541, 543; *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517; *Wenton* v. *Commonwealth*, 335 Mass. 78, 83. The standard, however, is market value. What may be the highest and best use of the particular property is to be considered merely for its bearing on market

value, using whatever methods of ascertaining market value may be appropriate or necessary to fair proof of market value in the particular circumstances. See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 195. Here the judge allowed the witness great freedom in expressing his opinion and stating the potential uses of the property which were among the reasons for that opinion. We perceive no prejudice to the petitioners from the judge's comment.

*Exceptions overruled.*