EMIL A. UNTERSEE, executor, *vs.* MAXIMILIAN UNTERSEE & others.

MAXIMILIAN UNTERSEE *vs.* EMIL A. UNTERSEE, executor.

Norfolk.    October 8, 1937. — February 7, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Executor and Administrator*, Continuance of business, Payments, Accounts. *Probate Court*, Auditor, Appeal, Costs.

The report of an auditor, appointed by a probate court to hear an executor's account with a stipulation that his findings of fact were to be final, properly was included in the record on appeal from a decree upon the account, and had substantially the same standing as a like report in an action at law.

Neither a legatee to whom an architect by his will had given the good will of his business nor any other beneficiary under the will was in a position to object to the allowance in a first account of the executor of items of expense incurred by the executor in completing work left uncompleted by the architect, irrespective of what might be determined in later accounts as to who was entitled to the avails of the work, where it appeared that the work was assumed by the executor with the coöperation of the legatee and the understanding and assent of all the other beneficiaries.

Costs and expenses can be allowed in the Probate Court under G. L. (Ter. Ed.) c. 215, § 45, only as an incident to a pending proceeding.

Although a petition in equity in a probate court and an account of an executor in large part were tried together, a decree awarding costs and expenses to one of the parties in both proceedings, entered two years after final decree in the equity proceeding and on the date of a decree on the account, was error, the proceedings being separate and the suit in equity no longer pending.

PETITION, filed in the Probate Court for the county of Norfolk on February 1, 1932, for allowance of the first ac-

count of the executor of the will of Franz Joseph Untersee, late of Brookline; also a

"MOTION," by Maximilian Untersee for counsel fees and costs, filed on May 7, 1934.

Decrees were made following hearings by *McCoole*, J., from which the executor appealed.

*J. H. Sherburne,* (*J. B. Dolan* with him,) for Emil A. Untersee, executor.

*R. B. Heavens,* for Maximilian Untersee and others.

QUA, J. The first matter is here upon the appeal of Emil A. Untersee, executor of the will of Franz Joseph Untersee, from a decree of the Probate Court allowing his first account with amendments reducing the amounts of certain items of credit to him for payments contained in schedule B, striking out altogether other items in said schedule, and charging the executor with a correspondingly increased amount in schedule C.

The second matter is here upon the executor's appeal from a decree of the Probate Court allowing to Maximilian Untersee $4,000 for counsel fees and $286.73 "costs and expenses" upon his petition hereinafter described.

Franz Joseph Untersee died September 5, 1927. He had been an ecclesiastical architect. At the time of his death he was engaged upon ten different jobs for various religious institutions. The first clause of his will read as follows:

> "To my sons, Carl R. and Maximilian Untersee of said Brookline, I give the good will of my business, books on architecture, plans, drawings and tools used by me in my profession as an architect, but not my book accounts, which are to form part of the residue of my estate."

The remainder of the will does not appear in this record.

The testator's sons, Carl and Maximilian, had been associated with the testator in his architectural work before his death and were acquainted with the jobs then unfinished. Carl and another son, Emil, the present accountant, were appointed executors. After a few months Carl died, and Emil, as surviving executor, continued the settlement of the estate. Carl and Emil undertook as executors to

complete the ten jobs on the theory that the uncompleted engagements for services were assets of the estate. They employed Carl (himself an executor) and Maximilian to do the work at a salary of $75 a week. After Carl's death Maximilian continued with the work. The owners of the properties involved allowed the jobs to go on until all of them were completed, and the executors acquired therefrom for the estate "receipts and profits amounting to $8,528.01." Emil as surviving executor filed the account which is now before us February 1, 1932. The items to which the respondents object consist, in so far as they have been disallowed, of payments by the surviving executor for legal work, bookkeeping and accounting services, and executor's charges arising out of the completion of the testator's pending jobs. The contention of the respondents is that the executors had no right to undertake this work and therefore cannot be allowed for expenses incurred in carrying it on.

Shortly after the filing of the executor's account Maximilian filed in the Probate Court a petition in equity "for a determination of the value" of the legacy described in the first clause of the will hereinbefore quoted. Both the account and the petition in equity were referred to the same person as "auditor" whose findings were to be final. Before the filing of the auditor's report on the account a final decree was entered on the petition in equity declaring that the right to negotiate contracts for the architectural work upon the uncompleted jobs "was a part of the legacy to Maximilian and Carl," that the executors had no right to undertake this work, and that Maximilian and the estate of Carl were entitled to receive from Emil, the surviving executor, as part of the legacy the sum hereinbefore mentioned of $8,528.01 which the executor had realized from the doing of this work. The correctness of this decree is not before us. An attempt to have it revoked ended in an appeal to this court which was decided upon grounds not affecting the merits of the decree. *Untersee* v. *Untersee,* 293 Mass. 132.

While the executor's account and the petition in equity were both pending Maximilian filed a "motion" or petition,

afterwards amended, praying for an award to him of costs for counsel fees and expenses with respect to both proceedings. Upon this petition the court made the award hereinbefore mentioned, payable out of the estate.

1. We deal first with the executor's account. The respondents in this proceeding contend that the auditor's report, although printed with the appeal, is not properly a part of the record and cannot be considered, on the grounds that "The parties did not agree that the findings of the auditor should be submitted to this court as facts or evidence nor did any decree make the auditor's report a part of the record," and that the "report does not contain all the facts before the trial justice." We do not agree with this. When the Legislature by statute, now G. L. (Ter. Ed.) c. 221, § 57, authorized the appointment of auditors in proceedings on probate accounts we think it intended to give to their reports, in so far as might be consistent with the necessities of probate practice, a status similar to that of auditors' reports in common law actions. In *Gallagher* v. *Phinney*, 284 Mass. 255, 257, it is said that an auditor's report under this statute "stands like an auditor's report at common law." It is now settled that in actions at law where the court has appointed an auditor with the order that his findings of fact shall be final the auditor becomes the primary fact finding tribunal. *Sojka* v. *Dlugosz*, 293 Mass. 419, 422, and cases cited. His report is in effect a case stated and as such is of itself a part of the record. *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 152. *Raymond* v. *Davies*, 293 Mass. 117. *Old Colony Railroad* v. *Wilder*, 137 Mass. 536, 537. Whether or not "case stated" as a technical term may with accuracy be used in probate practice, there would seem to be no reason why, with agreement of the parties interested, an auditor's findings of fact on a probate account may not be made final and no reason why, when so made, such findings should not have substantially the same effect as the basis of the decision that similar findings would have in an action at law. G. L. (Ter. Ed.) c. 231, § 126, recognizes the possibility of a case stated in probate proceedings. See § 144. See Rules

18, 20, 21 of the Probate Courts (1934). In none of the cases cited by the respondents, such as *Davis* v. *Gay*, 141 Mass. 531, and *Gallagher* v. *Phinney*, 284 Mass. 255, 257, were the findings of the auditor final. *McMillan* v. *Gloucester*, 244 Mass. 150, was a complaint for abatement of taxes. Findings of the commissioner were to be final, but that case was decided before *Merrimac Chemical Co.* v. *Moore*, and is distinguishable in other respects. It is our duty to deal with the account upon the findings of fact of the auditor with appropriate inferences therefrom. G. L. (Ter. Ed.) c. 231, § 126. *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 152. *Sanderson* v. *Norcross*, 242 Mass. 43, 44. *Hopkins* v. *Hopkins*, 287 Mass. 542, 545. *Spilios* v. *Papps*, 288 Mass. 23, 27. And of course we are not bound by the auditor's views as to matters of law. *Springfield National Bank* v. *Couse*, 288 Mass. 262, 269.

The findings of the auditor are detailed and explicit to the effect that Carl and Emil as executors, with the assent of Maximilian and certain other beneficiaries, employed an attorney of good reputation who had been in practice forty-nine years; that he advised them that it was the executors' duty to continue the uncompleted work for the benefit of the estate; that Carl and Maximilian understood, accepted and relied upon this advice to the same extent as did Emil and did the architectural work in behalf of the estate until Carl's death; that thereafter Maximilian continued so to perform the work and continued in the belief that its performance was an obligation of the estate until after the filing of the executor's account here in question; that Carl and Maximilian assisted in making arrangements with some of the owners for the completion of the work by the estate and signed a petition for compromise of one of the claims made by the estate for these services. It is further found that "all of the beneficiaries" understood and accepted the advice of the attorney and "acquiesced in the course of conduct occasioned thereby." The "decision of the executors Carl and Emil to undertake the completion of the ten jobs as obligations of the estate and to engage Carl and Maximilian at $75 each per week to perform architec-

tural services incidental to that end and [*sic*] was acquiesced in by all the beneficiaries of the estate." ". . . the decision and the acts of the executors in pursuing such course of conduct was acquiesced in by all persons interested in the estate." The heirs and the executors "all had reasonable cause to follow . . . [the] advice" of the attorney, and "nothing transpired to give Emil and Carl or anyone else cause to suspect" that the advice was wrong. All of the parties have acted in good faith. It is found expressly or by fair implication that the several credits for services and expenses which have been disallowed would have been reasonable and proper, if it had been correct for the estate to undertake the completion of the pending jobs.

Upon these findings we are satisfied that neither Maximilian nor the estate of Carl is in a position to object to the allowance of items for services and expenses incurred as a consequence of the assumption by the executors of the uncompleted work. Carl was himself one of the executors until his death. Both Carl and Maximilian accepted the advice of the attorney and participated in the undertaking and performance of the work by the estate. They were as much responsible for the performance of the services and the incurring of the expenses as was Emil, the present accountant. Neither they nor their representatives can now repudiate the whole course of dealing and throw the burden upon Emil to their own advantage. As to them the disputed items of schedule B must be allowed. *Poole* v. *Munday*, 103 Mass. 174. *Tracy* v. *Bishop*, 298 Mass. 182, and cases cited. *Brigham* v. *Elwell*, 145 Mass. 520. We are also of the opinion, though with more hesitation, that these items must be allowed as against the other beneficiaries. We interpret the findings as meaning that all of the beneficiaries in some manner indicated their approval of the course adopted either before the work was undertaken or while it was going on.

We do not understand that the contention is made that the decree on the petition in equity awarding to the estate of Carl and to Maximilian as a part of their legacy the $8,528.01 which the executor had realized from completing

the work is *res judicata* as to entire issues in the present accounting. If it is intended to make that contention, we think that it cannot be supported on any facts found by the auditor. There is nothing to show who were the parties to that petition, or that the items here in controversy were actually litigated there, and for aught that appears it might have been possible for the court to determine as it did that the specific legatees were entitled to the net profits realized by the executor from the work completed without adjudicating directly or indirectly upon the right of the executor to be allowed for expenses and services incurred in performing work which he had undertaken with the consent of all parties interested in the estate. The declaration in that decree that the executors "had no right to undertake" the uncompleted work seems to us to refer only to rights of the executors as derived from the will or from the law of administration. It does not seem to us to have been intended to predetermine the method of accounting, if it should later appear that the executors had in fact undertaken this work with the consent of all parties interested. At least we think that the findings of the auditor as to the scope and issues of the petition in equity are insufficient to show that the broader construction is the true one.

2. The paper which initiated the proceeding upon which costs for counsel fees and expenses were awarded was entitled "Estate of Franz Joseph Untersee In the Matter of the Equity Petition and First Account of the Executor Motion for Counsel Fees and Cost." It refers to services and expenses in both matters. Neither the final decree on the petition in equity which was entered March 25, 1935, nor the decree on the account, which bears the date of January 15, 1937, contains any mention of this motion or of costs. But also on January 15, 1937, nearly two years after the decree in equity a separate "decree" was filed "In the matter of the motion for counsel fees and costs." This is the only decree dealing with costs. On March 8, 1937, the judge made a separate "Report of Material Facts" relating to the decree for costs, which, however, he entitled as in "Matter of the First Account . . . Decree Allowing Costs

and Expenses." It would seem that until after the entry of all three decrees the "Motion" for costs was treated as an independent proceeding by itself and not as an incident either to the petition in equity or to the account. However this may be, it is plain from the judge's findings of fact that the sum of $4,286.73 which he allowed to Maximilian out of the estate for counsel fees and expenses was allowed with respect to both the petition in equity and the account. The amount thus allowed as "costs" greatly exceeded the total sum in dispute on the account. It is almost a necessary inference that the larger proportion of it must have been allowed for services and expenses arising primarily out of issues involved in the petition in equity which had been ended by final decree nearly two years before. Costs and expenses can be allowed only as an incident of some pending proceeding, and the court has no power to allow them as to any proceeding after the final decree therein. G. L. (Ter. Ed.) c. 215, § 45. *Lucas* v. *Morse*, 139 Mass. 59. *Ensign* v. *Faxon*, 229 Mass. 231. *Mulloney* v. *Barnes*, 266 Mass. 50, 53, 54. We have not overlooked the facts that the petition in equity and the account were in large part at least tried together upon the same evidence and that the two proceedings were otherwise closely related. Nor have we failed to note the judge's findings that "It was one continuous proceeding" and that "A division of the various matters is impossible." Yet it seems plain from the record that the petition in equity and the account were two separate proceedings; that the major issues concerning the larger sums were involved and determined under the petition in equity; that after the final decree in equity the litigation continued on the account; and that the decree allowing a single sum for costs and expenses related to both proceedings, was entered long after the equity petition was ended, and is therefore inconsistent with the established practice. No costs can now be allowed with respect to the petition in equity, but, as the decree on the account must be reversed, the Probate Court may in its discretion, upon the final allowance of the account, make a reasonable award for such costs, if any, as can be allocated to the proceedings in that

court upon the account alone. If costs are allowed they should be determined in accordance with the principles discussed in *Boynton* v. *Tarbell*, 272 Mass. 142.

The result is that both decrees appealed from are reversed, and a new decree in accordance with this opinion is to be entered on the account.

*Ordered accordingly.*