Boston Edison Company, petitioner.
Charles Cifre, trustee, *vs.* Boston Edison Company.

Norfolk. March 7, 1960. — May 10, 1960.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Cutter, JJ.

*Practice, Civil,* Exceptions: contents of bill, prosecution, whether error harmful; Auditor: discharge of report, recommittal. *Evidence,* Of value; Opinion: expert. *Error,* Whether error harmful.

Certain papers filed in a proceeding but not incorporated in a bill of exceptions, either in the text or by reference, were not properly before this court even though they were necessary to a determination of the issues raised by the bill and were printed in the brief of counsel for the excepting party. [89]

Where it appeared that the respondent in a case filed a bill of exceptions respecting certain interlocutory matters and subsequently filed a second bill respecting further matters, including an order for judgment for the petitioner on an auditor's report, and that the first bill was disallowed and the second bill was allowed on the same day, the case on that day was not "ripe" for final preparation and printing of the record under G. L. c. 231, § 135, as amended through St. 1941, c. 187, § 1, since the possibility then existed that the respondent might within twenty days therefrom file a petition to establish the truth of the exceptions in the first bill under Rule 22 of the Rules for the Regulation of Practice before the Full Court (1952), as amended, 332 Mass. 790; and in the circumstances failure of the respondent to give within ten days after the allowance of the second bill a written order under § 135 for the preparation of the papers relating to that bill did not constitute ground for an order dismissing it. [90–91]

In an action referred to an auditor whose findings were to be final, the disposition of motions to discharge the auditor's report and to recommit for a full report of the evidence lay in the discretion of the trial court. [92]

At the trial of a petition for assessment of damages for a taking of an easement over land by eminent domain, there was no abuse of discretion in permitting an expert witness to make use of a plan of a proposed subdivision of the land in explaining the reasons for his opinion so long as he was not permitted to go unduly into the details of that particular unexecuted scheme for developing the land. [92–93]

At the trial before an auditor of a petition for assessment of damages for a taking of an easement by eminent domain for a public utility pole line, error in permitting an expert witness to express an opinion about the

diminution in value of the land caused by the taking without having first shown that he had considered the value of the land before the taking and its value after the taking was not prejudicial where it appeared that the auditor treated the witness's opinion as "arrived at by taking the value of the land before and after the taking of the easement" and that the witness testified that one method he used in computing the damage was by determining the value of the land before and after the taking and that he used another method as "just a check on the arithmetic of the" first method.   [93–94]

PETITION, filed in this court on March 6, 1958, to establish exceptions.

PETITION for assessment of damages for a taking of an easement, filed in the Superior Court on May 3, 1954, and referred to an auditor.

Certain motions of the respondent were denied by *O'Connell, J.,* who ordered judgment for the petitioner on the auditor's report, disallowed the bill of exceptions which was the subject of the respondent's petition to establish exceptions, and allowed a second bill of exceptions filed by the respondent.   A third bill of exceptions by the respondent to the dismissal of the second bill by *Murray, J.,* was allowed.

*Frank B. Frederick, (Victor H. Kazanjian* with him,) for Boston Edison Company.

*Gregory Sullivan,* for Cifre.

CUTTER, J.   A petition under G. L. c. 79 for the assessment of damages occasioned by a taking by the respondent (Edison) was referred to an auditor, whose findings were to be final.   Edison, in accordance with Rule 90 of the Superior Court (1954), filed objections to the auditor's report and requested that he summarize the evidence with respect to each objection.   After the auditor filed his report, Edison, on May 22, 1957, filed three motions: (a) to discharge the report and for a new trial; (b) to recommit the report to require the evidence to be reported; and (c) to recommit the report for proper summaries.   Pursuant to Rule 46 of the Superior Court (1954) Edison's counsel submitted an affidavit referring to the testimony pertinent to Edison's objections.   The judge denied all three motions.   On July

8, 1957, Edison filed a bill of exceptions (bill no. 1) relating to the denial of these motions.

On September 4, 1957, Edison filed a motion for a new trial or for recommittal. On November 22, 1957, the judge (1) overruled Edison's objections to the report, (2) denied the motion for a new trial or to recommit, and (3) ordered judgment for the petitioner in the sum fixed by the auditor. Edison with respect to these rulings filed a second bill of exceptions (bill no. 2).

On February 14, 1958, the judge (possibly feeling that the motion of September 4, 1957, took the place of those of May 22, 1957) disallowed bill no. 1. He allowed bill no. 2. Edison on March 6, 1958, within the twenty days allowed by Rule 22[1] of the Rules for the Regulation of Practice before the Full Court (1952), as amended on November 4, 1955 (332 Mass. 790), filed in this court a petition to establish the truth of the exceptions stated in bill no. 1. A commissioner found that bill no. 1 did conform to the truth.

As of October 8, 1959 (when bill no. 3, mentioned below, was allowed), Edison had never given the clerk of the courts any order for preparation of papers for this court with respect to bill no. 2, under G. L. c. 231, § 135, as amended through St. 1941, c. 187, § 1 (later amended by St. 1959, c. 109). On December 1, 1958, bill no. 2 in effect was dismissed[2] by a judge of the Superior Court because of Edison's failure to comply with § 135. On February 4, 1959, this court (see G. L. c. 231, § 133, and c. 211, § 11) granted leave to Edison to claim exceptions to, and to appeal from, the order dismissing bill no. 2. Edison seasonably filed a third bill of exceptions (bill no. 3) relating to the dismissal of bill no. 2. Edison also claimed an appeal from this order but this appeal has not been perfected.

---

[1] Repealed March 29, 1960, effective April 14, 1960, by reason of St. 1960, c. 207, § 4, amending G. L. c. 231, § 117. See 340 Mass. 790.

[2] We intentionally use the word ''dismissed'' rather than the term ''overruled,'' somewhat confusing when used in this sense, found in G. L. c. 231, § 133 (as amended through St. 1933, c. 300, § 2). See *Home Owners' Loan Corp.* v. *Sweeney,* 309 Mass. 26, 28.

1. No one of the three bills of exceptions purports to incorporate, either in the text or by reference, the auditor's report, the defendant's objections to the auditor's report, the auditor's summaries of evidence appended to his report, Edison's motions referred to in bill no. 1, Edison's counsel's affidavit under Rule 46 relating to these motions, or Edison's motion for a new trial or for recommittal. On January 7, 1960, this court denied Edison's motion to extend the record to include certain of these papers. Although Edison has printed these papers in an appendix to its brief, they are not properly before us for purposes of the bills of exceptions. See *Sarkesian* v. *Cedric Chase Photographic Laboratories, Inc.* 324 Mass. 620, 622–623. See also *Staples* v. *Collins,* 321 Mass. 449, 450–451. In *New England Gas & Elec. Assn.* v. *Ocean Acc. & Guar. Corp. Ltd.* 330 Mass. 640, 644–645, and *Wasserman* v. *Roach,* 336 Mass. 564, where questions relating to the reports of auditors whose findings were to be final were reviewed upon bills of exceptions, the original papers show that the auditor's reports and related papers were incorporated by reference in the bills of exceptions. Cf. an appeal under G. L. (Ter. Ed.) c. 231, § 96, from an order for judgment upon an auditor's report with findings of fact final, *United States Fid. & Guar. Co.* v. *English Constr. Co.* 303 Mass. 105, 108–110, where the auditor's report would be part of the record on appeal. Cf. also *Untersee* v. *Untersee,* 299 Mass. 417, 420; *Harrington* v. *Anderson,* 316 Mass. 187, 190–192. Even if under the third paragraph of G. L. c. 231, § 135 (as amended through St. 1941, c. 187, § 1), we could order these papers transmitted to us for consideration, such a power should be exercised sparingly where necessary papers should have been incorporated verbatim or by reference in the several bills of exceptions. Without these papers we are in no position upon bill no. 1 to determine (a) whether the judge abused his discretion in denying the motions for a new trial, to discharge the report, and to recommit in order to require the evidence to be reported (see *Barrows* v. *Checker Taxi Co.* 290 Mass. 231, 235; *Ravage* v.

*Johnson,* 316 Mass. 558, 562; *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 679) or (b) whether the summaries of evidence were inadequate. Although it does appear in bill no. 1 that, with reference to two objections to the auditor's report, the auditor refused to give any summary of evidence, since the objections themselves are not properly in the record, we are not in a position to determine whether such summaries were required under Rule 90 of the Superior Court (1954).

2. Bill no. 3 questions the correctness of the order of December 1, 1958, by which bill no. 2 was dismissed. Bill no. 2 was allowed, and bill no. 1 disallowed, on February 14, 1958. Under G. L. c. 231, § 135 (as amended through St. 1941, c. 187, § 1), "the party having the obligation to cause the necessary papers . . . to be prepared shall give to the clerk . . . within ten days after the case becomes ripe for final preparation and printing of the record for the full court, an order in writing for the preparation of such papers and copies of papers for transmission to the full court." There appears to be no direct precedent controlling in the somewhat unusual situation created by the disallowance of bill no. 1. The judge who dismissed bill no. 2 had little in the statute, court rules, or decided cases to guide him. Bill no. 1 did not become ripe for final preparation of the record at least until the case was ripe for final disposition because of an order for judgment or other order decisive of the case. See *Anti* v. *Boston Elev. Ry.* 247 Mass. 1, 3–4; *Driscoll* v. *Battista,* 311 Mass. 372, 373; *Rines* v. *Justices of the Superior Court,* 330 Mass. 368, 373–374, app. dism. 346 U. S. 919; *Bean* v. *399 Boylston St. Inc.* 335 Mass. 595, 596. Cf. *Vincent* v. *Plecker,* 319 Mass. 560, 563. As stated by Rugg, C.J., in *Capano* v. *Melchionno,* 297 Mass. 1, 13, "the public welfare and the rights of parties require that questions of law arising at a single trial ought to come before the full court by one record and ought not to be split into two or more separate proceedings." In accordance with this principle, when bill no. 2 was allowed on February 14, 1958, bill no. 1, if it also had been allowed,

could have been included in the same record.  See *Brooks*
v. *Shaw,* 197 Mass. 376, 378–379; *Stoneham Trust Co.* v.
*Aronson,* 296 Mass. 154, 156.  Cf. *Gifford* v. *Commissioner
of Pub. Health,* 328 Mass. 608, 617–619.  When bill no. 1,
however, was disallowed, the possibility existed that Edi-
son would file within twenty days, under Rule 22, as it then
read (332 Mass. 790), of the Rules for the Regulation of
Practice before the Full Court (1952), a petition to estab-
lish the truth of the exceptions.  This was, we think, suf-
ficient to prevent the case from being ripe for judgment.
Certainly, if, at the expiration of ten days after the disal-
lowance of bill no. 1 and the allowance of bill no. 2, judg-
ment had been entered on the docket, and then within
twenty days of the disallowance, as in fact was done, Edi-
son had filed its petition to establish the truth of its excep-
tions in bill no. 1, it would have been necessary to vacate the
judgment or to correct the docket to conform to the fact.
See *Everett-Morgan Co.* v. *Boyajian Pharmacy,* 244 Mass.
460, 462.  Cf. *Higgins* v. *First Natl. Stores, Inc.* 340 Mass.
618, 619–621.  Accordingly, we hold that the possibility
of the filing of that petition prevented bill no. 2 from being
ripe for the final preparation of papers under § 135.  Cf.
*Home Owners' Loan Corp.* v. *Sweeney,* 309 Mass. 26, 30,
where the pendency of an appeal which would not lie (see
p. 27) under G. L. c. 231, § 96, was held not to prevent the
allowance of a bill of exceptions from making a case "ripe"
for final preparation of the papers.  In the circumstances,
Edison's failure to give within ten days of the allowance of
bill no. 2 a written order under § 135 for the preparation of
the papers relating to that bill did not constitute ground
for the order dismissing bill no. 2.

3.  If the exceptions in bill no. 3 were sustained, bill no.
2, before its presentation to us, would await final disposi-
tion of bill no. 1 or sufficient action with respect to it to
allow its inclusion with bill no. 2 in a record for transmis-
sion to this court.  If we were to remand bill no. 1 to the
Superior Court for inclusion in a record covering both bill
no. 1 and bill no. 2, we assume that it would be open to Edi-

son to move to amend these bills by including in each the auditor's report and related papers. Accordingly, to avoid unnecessary further proceedings we consider them as printed in Edison's brief, as if they were properly here.

There was no error in the denial of the motions to discharge the auditor's report and to recommit the report for the purpose of requiring a full report of the evidence. Denial of these motions was a matter of discretion. See *Morin* v. *Clark*, 296 Mass. 479, 483; *Minot* v. *Minot*, 319 Mass. 253, 258.

The auditor's summaries of evidence furnished in purported compliance with Rule 90 were meager. If all the evidence claimed to be relevant had not been placed informally before us by reproduction in Edison's brief of its affidavit under Rule 46 (and the evidence incorporated in that affidavit by reference), we would have serious question whether recommittal to obtain adequate summaries was not required, so that Edison could present the questions of law saved by its objections under Rule 90. Although Edison in its affidavit under Rule 46 did not follow the course suggested as desirable in *Cantor* v. *Cantor*, 325 Mass. 719, 721, of "showing what would be a proper summary," it did refer accurately to the relatively few pages of evidence relevant to each objection. These afford us adequate basis for review of the substantive questions of law presented.

Rule 90, of course, did not require the auditor to summarize a colloquy of counsel involving no testimony to which Edison referred as relevant to a particular objection.

Several of Edison's objections to the report relate to the auditor's action in permitting an expert witness to make use of a plan of a proposed subdivision of the petitioner's land. The auditor did not exceed the bounds of the reasonable discretion which he had to permit an expert witness to state the reasons for his opinion and to explain those reasons with reference to potential uses of the land and to plans or chalks illustrative of such uses. So long as such an expert witness is not permitted to explore unreasonably the details of particular plans of development still essen-

tially speculative or is not unfairly precluded from giving testimony bearing upon relevant aspects of value, a judge or auditor has reasonable discretion in determining the extent to which the witness may explain the reasons supporting his conclusions. See *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 362; *Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 669–672. See also *Ford* v. *Worcester,* 339 Mass. 657, 659–662. Objections to the testimony of another expert witness on the ground that it was based upon unwarranted assumptions, or too closely upon a particular plan of proposed subdivision used as a chalk, went only to the weight of that testimony. See *Southwick* v. *Massachusetts Turnpike Authy., supra,* at pp. 670–671.

One substantial question was raised by the auditor's interrogation of one McSweeney, an expert witness, to obtain his opinion of the diminution in value of the petitioner's land caused by the taking, which was of an easement. In asking this opinion, the auditor said, "I . . . don't want to ask you . . . what it [the land] was worth before [the taking] and what it was worth afterwards." After the question had been answered the auditor said, "I don't care what the witness thinks it is worth before and . . . what he thinks it is worth after the poles are in, but in view of his familiarity with this type of development he has an opinion as to what that set of poles has diminished the value of the property." The auditor allowed this line of inquiry to remain in the record subject to Edison's objection.

The usual course of proving damage caused by a partial taking or the taking of an easement is to prove (a) the value of the affected property before the taking, and (b) its value after the taking.[3] The question permitted the witness to express an opinion about the diminution in value of the property caused by the taking without showing, as Edison was entitled to have him do, that he had considered first

---

[3] We need not consider whether in rare cases such a taking may destroy some item of property intrinsically having an ascertainable value so that this single element of damage can be determined separately and without reference to the value of the affected land as a whole. This is clearly not such a case.

the value of the property before the taking and the value after the taking. See *Valentino* v. *Commonwealth,* 329 Mass. 367, 368; *Lombardi* v. *Bailey,* 336 Mass. 587, 594 (and authorities cited); *Ford* v. *Worcester,* 339 Mass. 657, 659–660; *Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 671. The auditor probably incorrectly thought that an expert could determine the diminution in value caused by the easement in a vacuum wholly apart from any determination of the value of the injured property. It appears, however, from the auditor's summary of evidence relating to this objection that he treated the witness's opinion as "arrived at by taking the value of the land before and after the taking of the easement," although "there were other ways of assessing the damage." The witness also testified that one method he used in computing the damage was by determining the value of the land before and after the taking, and that the other method used by him was "just a check on the arithmetic of the" first method. In view of this, we conclude that there was in the circumstances no prejudicial error.

4. Since there is no merit in the substantive exceptions set out in bill no. 1 and in bill no. 2, there is no need for further consideration of the case in the Superior Court. Accordingly, the truth of the exceptions stated in bill no. 1 is established and the exceptions in bill no. 1 and bill no. 3 are overruled.

*So ordered.*