ALPHONSE J. PANKAUSKI *vs.* GREATER LAWRENCE SANITARY DISTRICT COMMISSION. February 5, 1982. Pankauski (the owner) seeks to recover compensation for the 1973 eminent domain taking by the sanitary district (the District) of a part of his land in Methuen between the Merrimack River and a proposed road. As a pro tanto award, he was allowed $2,900 by the District. The case was tried first (see G. L. c. 79, § 22, as amended by St. 1973, c. 983, § 1, and the recent further amendment by St. 1981, c. 476) in June, 1980, before a Superior Court judge without a jury. The judge awarded the owner $63,100. The case was retried in September, 1980, before a District Court judge (sitting in the Superior Court by statutory authority) and a jury, which found damages of $22,750 resulting from the taking. Judgment was entered for this sum, less the pro tanto award, plus interest and costs. The owner appealed.

1. At the second trial, the owner testified that he resided in Peabody and in the summer ran a parking lot in Salisbury, that he owned fifteen parcels in Methuen and about eight or nine parcels in Salisbury, and had purchased the land taken in 1950 with a view to developing it for single family housing for a "long haul investment at retirement." He had held the land between 1950 and 1973 except for a brief period between 1962 and 1966, when he had sold it to one Hyder taking back a mortgage, later cancelled. Then the land (including the area taken) was reconveyed to the owner. The owner had taken "a real estate appraisal course at East Louisiana Junior College" and "a tax title search course at Boston State" College. He was not permitted to give his opinion concerning the fair market value of the land taken immediately before the taking. No offer of proof of the owner's expected testimony was made. The owner, however,

was allowed to testify concerning the physical aspects of the land, the elevation of the riverbank, and the extent of odors, if any, coming from the river.

Because the second trial judge essentially excluded all of the owner's testimony concerning value it may be that no offer of proof was necessary. See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 199 (1956), and cases cited. Compare *Ford* v. *Worcester*, 339 Mass. 657, 659-660 (1959). The question, however, whether an owner has sufficient knowledge to permit him to testify as to the value of his own property, is "a preliminary question of fact to be decided by the trial judge," whose decision is "conclusive unless upon the evidence it was erroneous as matter of law." See *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951). Although the owner probably could have been permitted to testify as to value, we cannot say that the judge's decision to exclude his testimony on value was clearly erroneous.

2. A more difficult question is presented by the judge's action in admitting, over the objection of the owner's attorney, evidence of the sale price of land nearby bought in 1972 by the town of Methuen from William Knightly. Knightly, called by the District, tried hard to get into the record that the sale of his land was under threat of the town to take the land by eminent domain. It was shown that the Methuen conservation commission had asked the town to appropriate $40,000 to acquire certain land including Knightly's land. The town appropriated only $20,000, and later offers were made to owners of the land to be acquired, splitting up the $20,000 for all purchases of land in proportion to the sizes of the parcels. Knightly, faced with the prospect of eminent domain proceedings if he refused, took his proportionate part of the available money, as he described it, "under duress." Evidence should not be admitted of a sale, significantly affected by the prospect of an eminent domain taking and the possible necessity of expensive and inconvenient litigation, and inevitable delay. *Cobb* v *Boston*, 112 Mass. 181, 183-184 (1873). Such a sale "is not a reasonable or fair test of market value." Where, however, the evidence of a sale to a public body or authority reveals only that a sale has taken place, the evidence may be received. *O'Malley* v. *Commonwealth*, 182 Mass. 196, 198 (1902). The burden is upon the public body "offering the evidence to show that the price was not affected by" the public body's "known power . . . to seize the property if a voluntary transfer . . . [is] not made." *Wright* v. *Commonwealth*, 286 Mass. 371, 373-374 (1934). This position was somewhat modified in *Epstein* v. *Boston Housing Authy.*, 317 Mass. 297, 300-303 (1944), by recognition (at 301) that there exists a "presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion." In the *Epstein* case (at 302-303), it was held that the presumption there was not "rebutted" by any evidence "but retained its force as a rule of law requiring the judge to treat the sale as . . . noncom-

pulsory." See *Amory* v. *Commonwealth*, 321 Mass. 240, 256-257 (1947). See also *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth*, 336 Mass. 357, 360 (1957); *United-Carr, Inc.* v. *Cambridge Redevelopment Authy.*, 362 Mass. 597, 599-601 (1972), where (at 599) it was said that "[g]enerally, it is for the trial judge to make the preliminary determination . . . whether the sale was freely made."

The circumstance that this jury reached a figure of damages, about one third that reached in the first trial by an experienced and capable Superior Court judge, gives some basis for wondering whether the jury may have been influenced unduly by the low price shown for the Knightly transfer. Exclusion of that sale as "under duress" would probably have been sustained but we cannot say that the second trial judge's decision to admit it was "so wrong as to constitute error of law." See the *Epstein* case, 317 Mass. at 300, and the *United-Carr, Inc.* case, 362 Mass. at 599. Particularly is this so because, when evidence of the Knightly transfer was admitted, cross-examination for the owner had not fully developed some circumstances tending to show that the sale was not freely made. Also the owner's contentions would have been emphasized if then there had been a motion to strike the evidence of the price paid to Knightly.

3. The owner's counsel at the second trial filed two requests for instructions on the effect to be given to the first trial judge's decision as prima facie evidence. The second of these requests may have stated the applicable rule somewhat more precisely than the second trial judge did in his charge which covered the substance of the request. We need not consider whether greater precision in the charge would have been appropriate, because counsel, before the jury retired, did not request the judge to supplement his charge in any way. Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). See *Miller* v. *Boston & Me. Corp.*, 8 Mass. App. Ct. 770, 773 (1979).

*Judgment affirmed.*

*Manuel Katz* for the plaintiff.
*Joseph A. Miragliotta* (*John P. Ford* with him) for the defendant.