ISADORE WASSERMAN & another,[1] trustees, vs. CITY OF
PEABODY.

Essex.  June 5, 1985. — September 19, 1985.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Eminent Domain,* Damages. *Practice, Civil,* Instructions to jury.  *Evidence,* Value, Expert opinion.

At the trial of a proceeding to recover damages for the taking by the city
of Peabody of a strip of land as an easement for road improvement and
utility purposes during which the owner of the property contended that
its grant of an easement to the city a short time before the taking should
be disregarded in determining the value of the property as that easement
was to terminate upon an anticipated taking by the Commonwealth,
while the city claimed that the grant of the easement was a deliberate
friendly concession to the city which should be given effect according
to its terms, thus diminishing the compensation owing for the subsequent
taking, there was reversible error in the judge's charge to the jury, which
put the case in consonance with the owner's position, but made no
mention of the city's contrary contention. [784-785]

At the trial of an action seeking damages for the taking by the city of
Peabody of an easement for road improvement and utility purposes,
during which an expert witness for the owner of the property had testified
about a number of sales which he considered comparable, it was error
to exclude testimony of an expert witness for the city offered to show
the respects in which one of the sales in question was not comparable.
[787-788]

CIVIL ACTION commenced in the Superior Court on June
20, 1977.

The case was tried before *Katherine Liacos Izzo,* J.

*David S. Tobin* for the defendant.

*Dana C. Hanson* (*Edward I. Masterman* with her) for the
plaintiffs.

_____

[1] Stephen R. Karp.

KAPLAN, J.   In this action by the plaintiffs, as trustees of Peabody Estates Realty Trust, to recover compensation for a taking in condemnation by the defendant city of Peabody, judgment entered upon the verdict of a jury in favor of the plaintiffs for $170,000. We reverse, the action to stand for a new trial. After stating the basic facts, we describe the course of the trial below and show that on that footing the judge's instructions were faulty. Then we make certain comments regarding the conduct of the new trial. Finally, we mention an error in the exclusion of evidence which can be readily corrected at retrial.

1. *Basic facts.*   About 1972, the claimant trust acquired some thirty-two acres in Peabody from the Woelfel Trust with a view to constructing there a condominium complex. In 1973, after consultations and negotiations between Wasserman and others on one side, and city officials on the other, the locus, zoned for single-family units, was rezoned to permit condominium development. After further negotiations, a condominium plan was approved by proper city authority.

The land was adjacent to route 128. It appears that sometime in early 1975 a decision was reached by the Commonwealth and the city to eliminate a dangerous traffic situation on route 128 in the vicinity of the locus by laying down a connector road which we may call the "Summit Street Extension." On August 12, 1975, the trust, by Wasserman and Karp, executed an instrument granting the city, with recital of consideration paid, "the temporary right and easement . . . to construct, maintain and use a roadway . . . for the sole purpose of passing and repassing by non-commercial vehicles only" upon a strip of land (the "Premises") comprising 1.05 acres that formed part of the trust's thirty-two acres and ran alongside route 128. The easement was to terminate "on the first to occur of the following: 1. A taking by the Commonwealth of Massachusetts of the Premises or any part thereof. 2. Abandonment by the City of Peabody."

Later in August, the city of Peabody took by condemnation the strip of land above mentioned "as Right of Way and Utility Easement and not in fee, the trees and structures thereon,

situated within the limits of the City of Peabody in the vicinity of Route 128, and not heretofore appropriated for public use, said land to be used for the purposes of Right of Way and Utility Purposes." An order to take had passed the city council (9-2) on August 9, 1975, with a stated award of $1 as damages for the taking. On August 18, 1975, the mayor approved the order. Recordation occurred on August 27, 1975.

2. *Course of the trial.* The trustees contended that, in evaluating the easement taken by the city, there should be no diminution on account of the easement previously granted to the city by the trust. The reason why the prior grant should be disregarded was that the trust assumed, when it made the grant, that the Commonwealth would terminate the city's easement by the act of taking, i.e., condemning, "the Premises" — meaning the fee of the 1.05 acres — thus entitling the trust to recover the full value of that acreage. The plaintiff Wasserman indicated that that was his understanding. It was further intimated that an eliciting of the grant from the trust, followed by a taking by the city rather than the Commonwealth, should be viewed as a contrivance on the part of the city to deprive the trust of just compensation. The trust put in evidence an agreement between the Commonwealth and the city by which the Commonwealth was to reimburse the city for costs of constructing the connector road, including the acquiring of land rights; however, the agreement looked to the city to acquire the rights.[2] In line with its approach that the prior grant should not count, the trust offered proof of "comparable sales," and so forth.

The position of the city was that, as a considered act on the part of the trustees (who had the benefit of counsel), the grant

[2] In their brief the trustees try to analogize the present case to *United States* v. *Certain Land*, 476 F. Supp. 1031 (D.Mass. 1979), where the United States put extreme pressure on certain towns on Cape Cod to zone lands restrictively, and later claimed the benefit of that zoning as reducing values when it took portions of the land in condemnation. The court held against that claim. No such pressure can be found in the present case. Nor is the present case like those forbidding the allowance of an increase or decrease of the value of land because of the prospect that it would be taken in condemnation. See *Lipinski* v. *Lynn Redevelopment Authy.*, 355 Mass. 550, 553-554 (1969).

by the trust should be given effect according to its terms, thus diminishing the compensation owing for the subsequent taking. (The easement taken by the city was, in fact, greater than the granted easement because it extended to passage by commercial vehicles and to utility uses.) The city was contending also (as appears at note 8, *infra*) that at all events an easement on the 1.05 acre strip was not of high value because it did not affect adversely the use of the remainder of the land for condominium purposes. Thus the grant by the trust could be seen as a friendly, not very costly, act toward the city whose continued cooperation with the trust would be highly desirable. The official taking could be understood as confirmatory. The city's position was manifested in the order to take, which specified only a nominal sum as damages suffered by the trust.[3]

3. *Erroneous instructions.* In this situation of conflict the judge charged, over the city's objection, that if the jury should find "that the grant of the temporary easement before the taking was an accommodation to the City to assist in the elimination of a traffic hazard and the grant was made in anticipation of the formal taking by the Commonwealth of Massachusetts or the City, you are to disregard the existence of the temporary easement in making your determination of damages. The City of Peabody may not create a situation for its own advantage, such as obtaining a temporary easement, and then benefit from that situation in making a subsequent taking."[4]

This put the case in consonance with the trust's contention, but it made no mention of the city's contrary contention, i.e.

---

[3] It will be recalled that by the well known case of *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 190 n.2 (1956), municipalities were admonished to allow realistic rather than nominal sums in their orders of taking. Peabody claims, in effect, that the $1 was realistic because of the prior grant to it. And see note 8, *infra*.

[4] The judge went on to say: "If you find that the grant of the temporary easement was made in anticipation of the taking of a permanent easement or if you find that the grant of the temporary easement was part of the public work that necessitated the taking, the former owner may not be penalized as a result of the grant of the temporary easement. You may disregard the existence of the temporary easement in determining the damages caused by the taking of the permanent easement." (As to the judge's characterization of "temporary," see note 7, *infra*.)

that the grant by the trust was a deliberate, friendly concession to the city with consequences according to its terms. The leaning of the instruction toward the trust (no doubt unintentional) was in fact aggravated by the suggestion that the grant by the trust was induced by the city as a meretricious means of freeing the city of an obligation to pay for the taking.

Besides being tendentious, the instruction contained an ambiguity. If, indeed, the granted easement was considered by the parties to be a mere stopgap arrangement, it could be rightly called an "accommodation"; but equally would it be an "accommodation" — only a larger one — if the parties understood the grant as a full concession to the city. A juror taking the latter view was still invited to hold for the trust and put a value on the taking without regard to the "accommodation." Finally, where the instruction spoke of an "anticipation of the formal taking by the Commonwealth of Massachusetts or the City," it exceeded even the trust's claim which, as indicated, was that it was a taking by the Commonwealth, not the city, that was anticipated.

The instruction was unsatisfactory and calls for reversal of the judgment and a new trial.

4. *Comments about retrial.* As bearing upon the question of the extent and thus the value of the taking, there will have to be a determination whether there was a mutual assumption and understanding[5] that the grant by the trust was purely provisional — possibly intended initially to allow for prompt commencement of construction of the connector road — and consequently that it would not figure in the compensation for a taking that was to follow.[6] This issue entered into, but never

---

[5] As the trust argues, the parol evidence rule will present no obstacles. See *McRae* v. *Pope*, 311 Mass. 500, 505 (1942); *Rahilly* v. *Addison*, 350 Mass. 660, 662 (1966); 3 Corbin, Contracts § 586, at 491 (1960).

[6] The issue is an unusual one and the question may be raised whether it should be tried as part of the action to recover compensation, or should rather have been the subject of a separate action for a declaration. As it conditions the extent of the compensable taking, we think it may be included in the main action. Thus the trust lays claim to the value of the fee less the taking; the city relies on the granted easement as diminishing the fee; the trust attempts to show an understanding with regard to that grant. Compare

received clear definition in the trial below. The burden will be on the trust to establish the predicated basic understanding. It will not be enough to show that one of the trustees or both understood that the grant was only a stopgap; it will be necessary to bring home to the city a like understanding, so that the taking by the city, ahead of the anticipated taking by the Commonwealth, would count as wrongful conduct toward the trust. If the trust is able to make the proof just outlined, it need not go further and show that the city elicited the grant from the trust in bad faith, or as part of a contrivance intended to deprive the trust of a fair reward, but proof of such a design would be relevant and lead to the same result favorable to the trust.

The measure of compensation to the trust will be contingent on the answer to the issue as just formulated. If the answer is favorable to the trust, then compensation will consist of the difference between the fair market value of the entire parcel (disregarding the grant) just prior to the city's taking of its easement, and the value of the parcel after that taking. This will call for an explanation of what uses were permitted by the easement taken by the city; and, as these uses were quite comprehensive, sales of full fee interests may be "comparable sales" and evidence concerning them would be admissible on both sides.

If, on the other hand, the answer to the issue is unfavorable to the trust, then the award will be an estimate of the difference between the fair market value of the entire parcel prior to the city's taking as then subject to the granted easement, and the fair market value of the parcel after the city's taking. See

*Klein* v. *Commonwealth*, 318 Mass. 592, 593-594 (1945) (Qua, J.), where the claimant in condemnation was met by the defense that the claim had been settled, and the court held that any attack on the settlement on grounds of fraud should have been raised in the condemnation proceeding rather than in a later separate action. Cf. *People* v. *Southern Pac. Transp. Co.*, 33 Cal. App.3d 960, 966 (1973).

In any event, the issue whether there was an understanding with respect to the granted easement was dealt with in the trial below, and it would be harsh at this late date to insist that a fresh action be brought. And if, as we advise, the issue should be as independently and sharply delineated at retrial as it would be if separately litigated, there will be little, if any, practical difference between the two modes of procedure.

*Boston Edison Co., petitioner*, 341 Mass. 86, 93 (1960); *Colonial Pipeline Co.* v. *Gimbel*, 54 Md. App. 32, 38 (1983); 4 Nichols, Eminent Domain § 12.41[1], at 12-734 (1985 Supp. to rev. 3d ed.). It will be for the judge to explain what uses were permitted by the easement granted by the trust to the city and again by the easement taken by the city.[7] Comparable fee sales would be admissible as bearing on how far the value of the parcel had been surrendered by the trust through its allowance of the uses covered by the granted easement.

5. *Erroneous exclusion of evidence.* The witness Martin J. Coleman, with extensive real estate experience in and about Peabody, was called on the part of the trust and gave testimony about a number of sales claimed to be comparable, including in particular a sale involved in a condominium development going by the name of "Pickering Wharf" in Salem. Coleman was cross-examined about the Pickering Wharf and other sales. The city called another qualified witness, Robert V. Noone, and attempted to show through him the respects in which Pickering Wharf was not comparable. Upon objection, this line of questioning was cut off, as was any similar questioning about the other properties; this despite the witness's general qualifications and an offer to show his familiarity with the several properties covered in Coleman's testimony. It was not a proper ground for excluding Noone's testimony that Coleman had already been cross-examined on the question of comparability; nor was it a ground (as the judge may have thought) that Noone was not testifying to sales that he might himself

---

[7] The granted easement was spoken of as "temporary" (see note 4, *supra*). It is better considered an easement subject to conditions subsequent. If it becomes necessary (in the circumstance indicated in the text) to consider how far the value of the fee interest had been diminished by the granted easement at the moment of taking by the city, some, but in our view only a limited, offset should be allowed for the possibility that one or the other condition expressed in the grant by the trust might have occurred in the future were it not for the taking.

consider comparable.[8] The judge's error was the more serious because counsel for the trust laid emphasis on the instance of Pickering Wharf in his closing statement to the jury. The error in itself warrants reversal of the judgment. It will not be repeated at retrial.

*Judgment reversed.*

---

[8] At the time of trial, Noone had become part-time chairman of the Peabody board of assessors. In 1976 he had been retained by the city solicitor for Peabody, as a private expert, to appraise the connector road strip. He advised that there was no loss to the trust by reason of the taking because it had made the previous grant and because there was no adverse effect on the condominium use. There was evidence for the trust that three of 193 units were lost because of the connector road, but contrary evidence suggested that the three units could have been relocated, without loss.